THE PEOPLE on the relation of HENRY S. BEEBE, v. DANIEL EVANS, Clerk of the Recorder's Court for the cities of La Salle and Peru.

APPLICATION FOR A MANDAMUS.

The act of the general assembly, approved February 18th, 1857, entitled "An act to establish a recorder's court for the cities of La Salle and Peru," is unconstitutional. The jurisdiction of such courts was designed to be limited to territory within the limits of cities.

THE relator, in his petition, sets out the establishment of the court for the cities of La Salle and Peru, under the act of the general assembly, approved February 18, 1857, and that it has jurisdiction concurrent with the circuit court, except in cases of murder and treason, the appointment of Churchill C. Coffing as judge of the court, his acceptance, etc., the appointment of Daniel Evans as clerk of the court, and his acceptance, etc. That Evans was to perform for the said court the same duties that were performed by clerks of the circuit

courts. That a precipe for a summons was presented to Evans, to be filed by him in his office, and a demand for a process thereon, tendering him his fees, etc. That Evans refused to file the precipe and issue the summons. Wherefore a mandamus was asked, etc. It was stipulated that an alternative mandamus need not issue. The facts stated in the petition were admitted. Evans assigned as the only excuse for his refusal, the unconstitutionality of the act, creating the court.

CHUMASERO and ELDREDGE, for the Relator.

C. BECKWITH, for the Respondent.

CATON, J. The question presented by this application is, whether the act creating the recorder's court of the cities of La Salle and Peru, is constitutional or not. We are not sufficiently advised to decide, satisfactorily to ourselves, many of the questions which might be raised on this application, but one objection to the act presents itself to our minds which we think is fatal to it, and upon which alone we must refuse the application for a mandamus.

While the court is named "The recorder's court of the cities of La Salle and Peru," it is, in fact, a court for the towns of La Salle and Salisbury. Its jurisdiction is not limited to those two cities territorially, but embraces the whole of the two towns last named. The first section of the act in defining the jurisdiction of the court, declares that it "shall have concurrent jurisdiction with the circuit court of La Salle county, in the towns of La Salle and Salisbury, in said county, except in the cases above excepted." Those exceptions are cases of murder and treason. The proviso to the first section of the fifth article of the constitution, under which alone the legislature had authority to establish this court, reads as follows: "*Provided*, That inferior courts may be established by the general assembly, in the cities of this state, but such courts shall have a uniform organization and jurisdiction." In our opinion, this limits the territorial jurisdiction of the courts, to be established under this proviso, to the cities, for which and within which they are established. It does not meet the spirit and intention of this provision of the constitution to establish the courts, within the cities nominally, and to require their session to be held within the city limits, but its territorial jurisdiction was intended to be thus circumscribed. They were intended to be for the benefit of the cities, and to meet their wants, and not of the adjacent country. They were designed to dispose of the litigation arising in the cities. If it were competent for the legislature to extend the jurisdiction

of the court to the two towns named, it would have been equally competent to have extended it to the whole county of La Salle, and with the same propriety might they have extended it to all adjoining counties, or even the whole state. The constitution fixes no territorial limit, unless it be to the city limits within which the courts are established, and we cannot understand the constitution as leaving an unlimited discretion in the legislature as to the territorial jurisdiction of these local courts; for local courts they were certainly designed to be. Should we sustain this act, then are the restrictions contained in the first section of the fifth article gone, and the legislature is at full liberty to create a class of courts, which may absorb all the litigation of the state, if they will but require their sessions to be held within the cities of the state. This, we think, is in manifest violation of the spirit and intention, as well as the letter, of the constitution.

We should have been willing to have obviated this objection to the law, by holding that by the provision of the constitution the territorial jurisdiction of the court should be limited to the city limits, and to that extent sustain the court, could we have fairly done so. Were the extension of the jurisdiction beyond the city limits contained in a separate clause, so that the unauthorized part of the law could be separated from that which is authorized, we might possibly have held that part alone to be unconstitutional. But here we find one broad grant of jurisdiction to the entire territory of the two towns, without any reference to the city limits whatever. Indeed, there is a complete misnomer of the court, for it should be called the recorder's court of the towns of La Salle and Salisbury, and it is no more constitutional with the name given it by the act, than it would have been by the more appropriate name suggested, or any other. Had such been its name few would have supposed, for a moment, that it would have been constitutional for any purpose. As well might the legislature have created a court, with jurisdiction all over the county, and given it any name, say the common pleas of La Salle county, and provided that it should be held in the cities of La Salle and Peru, and imposed the same duties upon the municipal authorities in reference to it, which this act does in reference to this court. For aught we can see such a court would have been just as well authorized as this, and we might, with the same propriety, have sustained it by limiting its jurisdiction to the city limits, as we can this. There is no such virtue in the name given to this court, as that we can sustain it with its present name, when we could not under another. We must look at the substance of the act, and see what kind of a court it creates, and not what it calls it. Had the act created

a city court, with a proper and authorized territorial jurisdiction, and then went on and extended that jurisdiction in special cases, or even generally, over the forbidden territory, we should have had some chance to draw a line of demarcation between that portion of the act which was authorized by the constitution and that which was not. But here we have no such line of separation. There is, in fact, no attempt and no intention to make a city court, with the required limitation of jurisdiction, and conferring upon it some unconstitutional powers, which may be lopped off, without invading or destroying some part of the act which may be constitutional. The jurisdiction granted is one and indivisable, and all must stand or all must fall. There is no chance to separate the good from the bad.

We are of opinion that the legislature transcended its constitutional power in the establishment of this court, and that the motion must be denied.

*Motion denied.*