SUPREME HIVE LADIES OF THE MACCABEES OF THE WORLD

*v.*

NELLIE HARRINGTON *et al.*

*Opinion filed April 18, 1907—Rehearing denied June 19, 1907.*

1. COURTS—*the jurisdiction of city court is confined to limits of city.* The territorial limits of the jurisdiction of a city court for service of original process is confined to the city limits wherein the court is located, and the legislature has no power to pass a law extending such jurisdiction beyond the city.

2. SAME—*paragraph 3 of the Practice act does not apply to city courts.* Paragraph 3 of the Practice act, being section 1 of the act of 1895, (Laws of 1895, p. 292,) which provides that "courts of record of the county" where the plaintiff resides shall have jurisdiction of actions against any insurance company, domestic or foreign, and that all process in such a suit may be directed "to any county of this State for service and return," does not include city courts, since the term "courts of record of the county" means courts having a territorial jurisdiction co-extensive with the county limits.

3. SAME—*paragraph 3 of Practice act is not the only authority for suing insurance companies.* Paragraph 3 of the Practice act is not the only authority for obtaining jurisdiction of foreign insurance companies, since such companies may be sued and jurisdiction thereof obtained under the provisions of paragraph 5 of such act, relating to incorporated companies.

4. BENEFIT SOCIETIES—*purpose of act requiring appointment of superintendent of insurance as an attorney in fact.* The purpose of section 5 of the act of 1893, (Laws of 1893, p. 133,) requiring foreign benefit societies doing business in this State to appoint the Auditor of Public Accounts (afterwards changed to superintendent of insurance) as its attorney in fact for service of process, is not to make service of process upon such attorney in fact the exclusive method of obtaining jurisdiction of companies, but to secure an agent for service of process whose agency cannot be disputed, and to prevent such companies from avoiding service of process by withdrawing its other agents from the State.

5. SAME—*when city court cannot obtain jurisdiction by serving process upon the superintendent of insurance.* A city court cannot obtain jurisdiction of a suit against a foreign benefit society by sending its process outside of the territorial limits of the city and obtaining service of the same upon the State superintendent of insurance.

6. REHEARINGS—*the proper scope of a petition for rehearing.* A petition for rehearing should be confined to a concise statement of the points supposed to have been overlooked by the court, with proper reference to the particular portion of the abstract and brief relied upon by the petitioner.

7. APPEARANCE—*what is not a waiver of objection to jurisdiction.* A defendant who refuses to plead further after demurrers have been sustained to his pleas to the jurisdiction, does not waive his objection to jurisdiction of his person by subsequently objecting to the court taking jurisdiction to assess damages, excepting to the action of the court in assessing damages and in rendering judgment and moving to expunge the judgment from the record for want of jurisdiction, where, in each case, the appearance was limited and the objections were confined to the question of jurisdiction.

8. SAME—*when objection to jurisdiction is waived.* A defendant who appears and makes a motion or files a plea, or takes any other step in the case which the court would have no power to dispose of without jurisdiction of the defendant's person, waives the objection to jurisdiction of his person, whether his appearance is limited or not.

SCOTT, C. J., and HAND, J., dissenting.

APPEAL from the City Court of Chicago Heights; the Hon. HOMER ABBOTT, Judge, presiding.

BASTRUP & O'NEILL, for appellant:

The territorial limits of the jurisdiction of a city court for service of original process by summons in a suit at law are circumscribed by the city limits of the city where it is located. *Reid* v. *Morton,* 119 Ill. 118; *People* v. *Evans,* 18 id. 361; *People* v. *Barr,* 22 id. 241; *Covill* v. *Phy,* 26 id. 432; *Gardner* v. *Witbord,* 59 id. 145; *Holmes* v. *Fihlenburg,* 54 id. 203; *Dixon* v. *Dixon,* 61 id. 324; *People* v. *Lippincott,* 67 id. 333; *Joslyn* v. *Dickerson,* 71 id. 25; *Miller* v. *People,* 183 id. 423.

The legislature, in creating city courts, has no power to authorize a city court to issue its summons in a suit at law beyond the territorial limits of the city in which it is located, so as to acquire jurisdiction over a defendant served without the city. *People* v. *Evans,* 18 Ill. 361; *Covill* v. *Phy,* 26 id.

432; *Holmes* v. *Fihlenburg,* 54 id. 203; *Murphy* v. *Lippincott,* 67 id. 333; *Miller* v. *People,* 183 id. 423.

Any Illinois statute attempting to authorize a city court to send its original process by summons in a suit at law to the sheriff of a foreign county, although within the State, to be served in such foreign county, is unconstitutional and void. *People* v. *Evans,* 18 Ill. 361; *Covill* v. *Phy,* 26 id. 432; *Holmes* v. *Fihlenburg,* 54 id. 203; *Miller* v. *People,* 183 id. 423.

Section 1 of article 6 of our constitution provides how the judicial power of the State shall be vested. This section has exhausted the judicial power of the people of the State. It is there fully disposed of, leaving no residuum. *Telegraph Co.* v. *Bank,* 74 Ill. 217.

The legislature has no power to confer upon a city court authority to issue its summons beyond the limits of the city in which it is located, so as to acquire jurisdiction over a defendant served without the city limits. *Holmes* v. *Fihlenburg,* 54 Ill. 203; *Joslyn* v. *Dickerson,* 71 id. 25.

Any act giving a city court concurrent jurisdiction with a circuit court throughout the county is unconstitutional and void. *People* v. *Lippincott,* 67 Ill. 333.

The legislature has no constitutional power to extend the jurisdiction of a city court beyond the city limits. *People* v. *Evans,* 18 Ill. 361; *Covill* v. *Phy,* 26 id. 432.

"Concurrent jurisdiction with the circuit courts within the city in which the same may be," means equal power and authority with the circuit court to hear and determine all civil and criminal causes, the subject matter of which arises within the prescribed territorial limits of the city. *Iron Works* v. *Railway Co.* 141 Ill. 491.

FRANK H. GRAHAM, and E. B. CRESAP, for appellees:

The appellant is a foreign corporation, and as such is only entitled to do business in this State on such terms and conditions as the legislature may impose. *Life Ins. Co.* v.

*People,* 95 Ill. App. 136; *Hooper* v. *People,* 155 U. S. 648; *Pierce* v. *People,* 106 Ill. 11; *People* v. *Insurance Exchange,* 126 id. 466; *Insurance Co.* v. *People,* 170 id. 474.

The discretion of the legislature in prescribing conditions for the admission of foreign corporations to do business within the State is absolute and uncontrolled. 6 Thompson on Corp. sec. 7467; *Doyle* v. *Insurance Co.* 94 U. S. 535.

A foreign corporation coming into this State and doing business in this State by permission and license of the people of this State acting through the legislature, is not protected by the constitution in respect to any matter or thing covered by the conditions of such permission and license. 6 Thompson on Corp. sec. 7467; *State* v. *Doyle,* 40 Wis. 175; *Doyle* v. *Insurance Co.* 94 U. S. 535.

The appellant foreign corporation is estopped to deny the jurisdiction of a court of record in this State over its person when such service was obtained in the manner prescribed by the statute. *Insurance Co.* v. *Insurance Co.* 2 Kan. App. 377; *Fink* v. *Insurance Co.* 60 Mo. App. 673.

No distinction can be made between the final and initial process of a city court, so far as legislative power to authorize its service is concerned. *Reid* v. *Morton,* 119 Ill. 118; *Miller* v. *People,* 183 id. 423; *Hickman* v. *O'Neal,* 10 Cal. 292; *Gemp* v. *Pratt,* 7 Daly, 197.

The constitution of Illinois, unlike the constitution of the United States, is a limitation upon the legislative department of the government, and not a grant of power to the legislative department. The legislature exercises the unlimited sovereignty of the State, except so far as the exercise of such sovereignty is denied by the constitution of Illinois or of the United States. *Field* v. *People,* 2 Scam. 79; *People* v. *Wilson,* 15 Ill. 388; *Sawyer* v. *Alton,* 3 Scam. 129; *Fletcher* v. *Peck,* 6 Cranch, 88; *Golden* v. *Price,* 3 Wash. C. C. 313; *People* v. *Railroad Co.* 15 Wend. 133; *People* v. *Supervisors,* 105 Ill. 445; *Mason* v. *Wait,* 4 Scam. 127; *People* v. *Wall,* 88 Ill. 76; Cooley's Const. Lim. (6th ed.) 104.

A court of law will not hold a statute to be null and void on the ground of unconstitutionality except on the clearest necessity and when its inconsistency with the fundamental law is plainly apparent. *Lane* v. *Dorman,* 3 Scam. 237; *People* v. *Thompson,* 155 Ill. 451; *Munn* v. *Illinois,* 94 U. S. 113; Cooley's Const. Lim. (6th ed.) 216; *Eakin* v. *Raub,* 12 S. & R. 330.

Mr. JUSTICE VICKERS delivered the opinion of the court:

On the 18th day of May, 1898, the appellant, being a fraternal beneficiary society organized under the laws of the State of Michigan, issued a benefit certificate to Ellen Hickey for the sum of $1000. The beneficiaries named in the certificate are the appellees, nieces of Ellen Hickey. The insured died on the 17th day of February, 1904. Proofs of death were furnished, and upon appellant's refusal to pay the amount mentioned in the certificate, an action of assumpsit was begun by the beneficiaries on the 7th day of February, 1905, when a summons issued out of the city court of Chicago Heights, directed to the sheriff of Sangamon county, this State, commanding him to summon the Supreme Hive of the Ladies of the Maccabees of the World to appear before the city court of Chicago Heights on, etc. The sheriff of Sangamon county returned that he had served the writ upon appellant "by reading the same to W. R. Vredenburg, superintendent of insurance of the State of Illinois, who is the authorized agent of appellant," etc.

In apt time appellant appeared specially and filed five pleas to the jurisdiction of the city court of Chicago Heights, setting forth, in substance, that the supposed contract upon which the action was brought was not made within the city of Chicago Heights nor within its territorial limits, nor made specifically payable in the city of Chicago Heights, but that the cause of action did accrue in the city of Chicago, in the county of Cook; that neither of the plaintiffs nor the de-

fendant resided in the city of Chicago Heights at the time of nor since the commencement of this suit; that the defendant was not found or served with process in said cause in the city of Chicago Heights; that the plaintiffs were, at the time of the commencement of this suit and at all times thereafter, residents of the city of Chicago; that the defendant is a corporation duly organized, existing and doing business under the laws of the State of Michigan; that service of process was actually had on the defendant in the county of Sangamon, in the State of Illinois, and outside the territorial limits of the city of Chicago Heights; that the city of Chicago Heights is situated in the county of Cook; that in the county of Cook there are a circuit court of Cook county and a superior court of Cook county, both of which said courts have jurisdiction over the plaintiffs and over the defendant.

To each and all of the five pleas to the jurisdiction of the said court appellees interposed a general demurrer. The court sustained the demurrers to all of the pleas, and, appellant standing by its pleas, judgment *quod recuperet* was rendered against appellant. A jury was waived by appellees, and the court assessed the damages, upon the evidence which was introduced, at the sum of $1110, for which sum final judgment was rendered against appellant. After the court had sustained the demurrer to the pleas of appellant it took no further part in the disposition of the cause, except at each stage of the proceedings to object to the action of the court in taking jurisdiction of the cause.

The position of appellant is, that the city court of Chicago Heights had no power to issue a summons to be served outside the territorial limits of the city of Chicago Heights, and that the service of the summons on the superintendent of insurance in the county of Sangamon was without authority of law.

The only question to be determined is whether the city court of Chicago Heights obtained jurisdiction of the per-

son of the defendant, and had the power, under the service had, to render a judgment *in personam* against it. The city court of Chicago Heights having been organized under section 240 of chapter 37 of Hurd's Revised Statutes of 1905, which provides for the organization of city courts in and for cities, only has concurrent jurisdiction with the circuit court within the city within which it is located, in all civil and criminal cases arising in said city and in appeals from justices of the peace in said city. It has often been held by this court that the territorial limits of the jurisdiction of a city court for service of original process is confined to the city limits wherein such court is located. (*People* v. *Evans*, 18 Ill. 361; *People* v. *Barr*, 22 id. 241; *Covill* v. *Phy*, 26 id. 432; *Holmes* v. *Fihlenburg*, 54 id. 203; *Gardner* v. *Witbord*, 59 id. 145; *Dixon* v. *Dixon*, 61 id. 324; *Joslyn* v. *Dickerson*, 71 id. 25; *Reid* v. *Morton*, 119 id. 118; *Miller* v. *People*, 183 id. 423.) In *People* v. *Evans, supra*, this court held that an act of the legislature creating the recorder's court of the cities of LaSalle and Peru was unconstitutional because the act purported to extend the jurisdiction of the court to the two towns named. This case has been followed in all the subsequent decisions of this court wherein the validity of a statute purporting to extend the jurisdiction of city courts beyond the limits of the city of their location have been involved, so that the law must be regarded as firmly established in this State that the legislature has no constitutional powers to pass a law extending the territorial jurisdiction of city courts beyond the territorial limits of the city wherein they are located.

The doctrine of these cases is not questioned by appellees, but it is contended that since the legislature may prescribe any conditions it sees fit upon which foreign corporations will be permitted to do business in this State, conditions relating to the manner of acquiring jurisdiction over such foreign corporations by the courts of this State may be lawfully imposed which would be unconstitutional and void as

applied to corporations residing in this State. If the existence of the power of the legislature in this regard be conceded to the extent claimed by appellees, the question still remains, has such power been exercised in the passage of any law which will uphold the jurisdiction of the city court of Chicago Heights over the person of appellant when acquired by service of its process in a foreign county? The only section of the statute which is pertinent to this inquiry is section 5 of an act passed June 22, 1893, and found in Hurd's Revised Statutes of 1905 as section 262 of chapter 73, which is, in part, as follows: "Each such society now doing or hereafter admitted to do business in this State and not having its principal office within this State, and not being organized under the laws of this State, shall appoint in writing the Auditor of Public Accounts or his successor in office to be its true and lawful attorney, upon whom all lawful process in any action or proceeding against it may be served, and in such writing shall agree that any lawful process against it which is served on said attorney shall be of the same legal force and validity as if served upon the society, and that the authority shall continue in force so long as any liability remains outstanding in this State. Copies of such certificate, certified by said Auditor of Public Accounts, shall be deemed sufficient evidence thereof, and shall be admitted in evidence with the same force and effect as the original thereof might be admitted. Service upon such attorney shall be deemed sufficient service upon such society." By a subsequent statute the superintendent of insurance has been substituted for the Auditor of Public Accounts in the foregoing section.

A careful reading of the foregoing statute will show that the conditions therein imposed on foreign societies of this character coming into this State to do business are, that such societies shall appoint, in writing, the superintendent of insurance their true and lawful attorney, upon whom all lawful process in any action or proceeding against

them may be served, and that such societies must agree, in writing, that the service of any lawful process against them which is served upon the superintendent of insurance shall have the same legal force and validity as if it had been served upon the society. There is nothing in this section which would authorize the service of an original summons issued by a circuit court against a foreign insurance company upon such foreign company by serving it upon the superintendent of insurance unless such service was had in the county where the suit was instituted. If this statute stood alone, it would clearly afford no warrant for sending a summons out of the county in and for which said summons had issued for service upon a foreign insurance society by service upon the superintendent of insurance in Sangamon county.

Appellees insist that the method of obtaining jurisdiction of a foreign insurance company by service upon the superintendent of insurance under this statute is exclusive, and if city courts may not send their process to Sangamon county for service on such superintendent, then the effect would be to deprive city courts of jurisdiction in all cases against such foreign corporations. This deduction proceeds from false premises. Service upon the superintendent of insurance is not the only method of acquiring jurisdiction over a foreign insurance company doing business in this State. Section 26 of chapter 32 (1 Starr & Cur. Stat. p. 1017,) provides that "foreign corporations, and the officers and agents thereof, doing business in this State, shall be subjected to all the liabilities, restrictions and duties that are or may be imposed upon corporations of like character organized under the general laws of this State, and shall have no other or greater powers." The language of this statute is plain and requires no interpretation. The fourth section of chapter 83 of the Revised Statutes of 1845, entitled "Practice," provided that "in all suits instituted against any incorporated company *in this State* a summons

returned executed on the president thereof, or served by leaving a copy of the summons with the principal clerk, cashier or secretary of such company at his office, * * * shall be deemed a sufficient service." Some doubt might well exist whether this statute was intended to embrace foreign corporations, but whatever doubt may have existed on this point was removed by an amendment to this section passed in 1853, which enacted that *"in all cases* where suit has been or may hereafter be brought against *any incorporated* company, process shall be served upon the president of such company," etc. Under this section as amended it was held by this court in *Mineral Point Railroad Co.* v. *Keep,* 22 Ill. 9, that foreign corporations doing business and having agents and property in this State were within this section of the statute and might be sued thereunder; and in *Peoria Ins. Co.* v. *Warner,* 28 Ill. 429, it was held that the act of 1853 was remedial and should be liberally construed.

The substance of the law of 1853 has been a part of the statute law of Illinois from its enactment to the present time and is now found as section 5 of our present Practice act, and under it actions against incorporated companies, both foreign and domestic, have been uniformly maintained. Under this section, taken in connection with section 26 of chapter 32, *supra,* there can be no question about its application to all foreign corporations doing business in this State. (*Hannibal and St. Joseph Railroad Co.* v. *Crane,* 102 Ill. 249.) Insurance companies are not excluded from section 5 of the Practice act by reason of the special provision contained in section 3, relating to insurance companies alone. In *North American Ins. Co.* v. *Yates,* 214 Ill. 272, it is said: "The purpose of our statute [section 26 of chapter 32] is to produce uniformity in the powers, liabilities, duties and restrictions of foreign and domestic corporations of like character, and to bring them all under the influence of the same law." If, as contended by the appellees, the superintendent of insurance is the only person

upon whom original process can be served in a suit against a foreign insurance company, then foreign insurance companies are not subject to the provisions of section 5, but the service must be had on the superintendent of insurance, although the president or other officers or agents of such company might reside or be found in the county where the suit was brought. Under this construction foreign insurance corporations would not be subject to the same powers, liabilities, duties and restrictions as domestic companies, as required by the statute already referred to, which shows that the construction contended for should be rejected for the reason that such construction brings the two statutes relating to the same subject in conflict with each other.

The true intent and meaning of the statute requiring foreign insurance companies to appoint the superintendent of insurance as an attorney in fact, upon whom service of process might be had, was to enable the citizens of this State to secure service upon such foreign companies by serving the superintendent of insurance, whose agency for the purpose of such service could not be disputed, and to take it out of the power of such company to avoid service by withdrawing all of its agents from the State in case it elected to cease doing business within the State. But it was not the intention of the legislature to take away the substantial rights heretofore existing in the people of this State to bring suits against foreign insurance companies in any of the courts of this State having jurisdiction, and have the summons served upon such company in the manner and upon the agents as provided by section 5 of the Practice act. In *Johnson* v. *Hanover Ins. Co.* 15 Fed. Rep. 97, which was a suit on an insurance policy in the United States Circuit Court for the Northern District of Illinois, it was held that service upon an agent of the company was valid service and gave the court jurisdiction, notwithstanding the company had, under the statute of the State, appointed an attorney in fact, George D. Gould, of Moline, in Rock Island county,

its lawful attorney upon whom process could be served. The court held that the law requiring such foreign company to appoint an attorney in fact for the purpose of service of process did not repeal the law providing for other means of service. While the language of the statute under which the company appointed its attorney in that case is different in some material respects from the one involved here, still the reasoning of the opinion of Justice Blodgett is applicable here, and we approve it.

Section 3 of the Practice act (Hurd's Stat. 1905, p. 1531,) is as follows: "The courts of record of the county wherein the plaintiff or complainant may reside shall have jurisdiction of all actions hereafter to be commenced by any individual against any insurance company, either incorporated by any law of this State or doing business in this State. And all process issued in any cause commenced in the county wherein the plaintiff may reside wherein an individual may be plaintiff or complainant and any such company defendant may be directed to any county of this State for service and return."

It is by virtue of the foregoing section that the courts of record of the county wherein the plaintiff or complainant may reside are given jurisdiction of all actions wherein an individual is plaintiff or complainant and an insurance company is defendant, and are authorized to direct their process to any county of the State for service and return. It will be noted that the foregoing section of the Practice act places foreign and domestic insurance companies on the same footing. There is here no attempt upon the part of the legislature to impose any conditions upon foreign companies from which domestic companies are exempted. If this section of the statute were repealed, all suits against insurance companies, both foreign and domestic, would be subject to the same rules as to jurisdiction, issue and service of process as other corporations. If section 3 of the Practice act be so construed as to include city courts, this construction,

on the authority of the cases already cited, would require us to hold such section unconstitutional. But the language of this statute, *"the courts of record of the county* wherein the plaintiff or complainant may reside," etc., does not include city courts. City courts are courts of record in and for cities and are not courts of record for the county, within the meaning of this statute. "Courts of record of the county" includes only such courts as have a territorial jurisdiction co-extensive with the county limits.

It follows from what has been said that there is no law in this State which authorizes a city court to send its original process beyond its territorial jurisdiction for service, and that there is no law of this State which required appellant to agree, as a condition upon which it was admitted to do business in this State, that it would submit itself to the jurisdiction of the city court of Chicago Heights by virtue of a summons issued out of said court and served by the sheriff of Sangamon county upon the superintendent of insurance. There was, therefore, no jurisdiction of the court below over the person of the defendant, and the judgment rendered herein is for that reason erroneous and must be reversed.

*Judgment reversed.*

Subsequently, on petition for rehearing, the following additional opinion was filed:

Appellees have filed a petition for rehearing, in which three grounds are urged for granting it. So far as the first and second points are concerned, they have had our consideration in the opinion heretofore filed. The third point urged for a rehearing is, that appellant waived the objection to the jurisdiction of the court by appearing to the merits after the court had sustained demurrers to the several pleas to the jurisdiction of the court. This point was not specifically raised by appellees in their original brief filed in this cause. It was not until the petition for rehearing was filed that the specific matter relied on as a waiver of jurisdiction

was called to our attention.  While there are some general observations in appellees' original brief, and also in the answer to a former petition for rehearing by appellant, in regard to a waiver, in neither instance was it contended that appellant had waived the question of jurisdiction by a general appearance to the merits.  It is apparent from the fact that in the petition for rehearing an entirely different line of authorities are cited and relied on from those cited and relied on in the original brief, that the question of waiver by an appearance to the merits is an afterthought, and was not the character of waiver that appellees referred to in their original brief and answer to appellant's petition for rehearing.  In view of the fact that the question of waiver is only brought to our attention in the petition for rehearing, we might well refuse, under our rules, to consider it at all.  A petition for a rehearing should be confined to a concise statement of the points supposed to have been overlooked or misapprehended by the court, with the proper references to the particular portion of the original abstract and brief relied upon.  (Rule 30, 204 Ill. 18.)  But since appellees now contend that this point was raised in their original brief and argument, we are inclined to give them the benefit of the doubt and express our views briefly upon the question of waiver from the viewpoint urged in their petition for rehearing.

In *Nicholes* v. *People,* 165 Ill. 502, this court said: "A special appearance must be for the purpose of urging jurisdictional objections only, and it must be confined to a denial of jurisdiction.  An appearance for any other purpose than to question the jurisdiction of the court is general.  (2 Ency. of Pl. & Pr. 632; *Abbott* v. *Semple,* 25 Ill. 107; *McNab* v. *Bennett,* 66 id. 157; *Crull* v. *Keener,* 18 id. 65.)  In *Crull* v. *Keener, supra,* it was said (p. 66): 'There are cases where the defendant may make a *quasi* appearance for the purpose of objecting to the manner in which he is brought before the court, and, in fact, to show

that he is not legally there at all; but if he ever appears to the merits he submits himself completely to the jurisdiction of the court and must abide the consequences.' If he appears to the merits no statement that he does not will avail him, and if he makes a defense which can only be sustained by an exercise of jurisdiction the appearance is general, whether it is in terms limited to a special purpose or not. 2 Ency. of Pl. & Pr. 625."

The rule laid down in the language above quoted is the well established doctrine in this State. When the question is presented whether a defendant has appeared to the merits and thus waived the question of jurisdiction over his person, the test is, has the defendant made a defense or taken other steps in the cause the disposition of which involves the exercise of jurisdiction. If the defendant appears and makes a motion or files a plea or takes any other step which the court would have no power to dispose of without jurisdiction of the defendant's person, such action on the part of the defendant will be a submission of his person to the jurisdiction of the court and will be a waiver of any objections to the jurisdiction. He cannot, by his voluntary action, invite the court to exercise its jurisdiction and at the same time deny that jurisdiction exists. In the case before us the defendant appeared and filed pleas to the jurisdiction of the court, as stated in the original opinion filed herein. After demurrers to these several pleas had been sustained, the abstract shows that the defendant elected to stand by said pleas and refused to plead further in said cause; that the court thereupon proceeded to hear the evidence and assess the damages. It is also shown that the defendant objected to the court taking jurisdiction for the purpose of assessing damages, and excepted to the action of the court in assessing damages and to the rendition of the judgment. Subsequently the defendant moved the court to expunge its said judgment from the record, for the reason that the court had no jurisdiction to render the judg-

ment. In each instance the defendant limited its appearance for the sole purpose of questioning the jurisdiction of the court, and for no other purpose, and based its objections on the want of jurisdiction. There was nothing in any of the steps taken by appellant in the court below that required the exercise of jurisdiction to dispose of them. It was wholly unnecessary for the defendant to follow up its pleas to the jurisdiction of the court by objecting to the subsequent proceedings on the ground that the court had no jurisdiction of the person of the defendant, but, since all of these objections are entirely consistent with appellant's pleas to the jurisdiction, it is difficult to see how they can be held to amount to a waiver of the jurisdictional question. There is therefore nothing in this point that requires any modification of the views hereinbefore expressed in this case.

The former opinion of this court will be adhered to and the petition for rehearing denied, but the cause will be remanded to the city court of Chicago Heights to enable the appellees to take such steps as they may desire for the purpose of acquiring jurisdiction of appellant, and in this respect the former opinion will be modified. The order will be that the judgment be reversed and the cause remanded, with directions to overrule the demurrer to the pleas.

*Reversed and remanded.*

SCOTT, C. J., and HAND, J., dissenting:

The decision of the majority is reached by holding that the city court of Chicago Heights is not, within the meaning of the statute, one of "the courts of record of the county wherein the plaintiff or complainant may reside," although it is located in, and its territorial jurisdiction is wholly within, the county of Cook, in which appellees (plaintiffs below) reside. No authority is cited in the brief and argument of appellant in support of this position, and we think the conclusion of the majority does violence to the plain meaning of the quoted words and to the legislative intent.

The evident purpose of the legislature was to permit the plaintiff to sue in any court of record held and located within the county in which he resided, in which he could have sued had the defendant been found within the territorial jurisdiction of that court. Consequently, the quoted words mean any court of record held and located within the county in question which has jurisdiction of the subject matter of the suit.

In *Simon* v. *Mann,* 33 Minn. 413, it was held that the words "a court of record of this State," found in section 1 of the Insolvent law of that State of the year 1881, included the circuit court of the United States in and for the district of Minnesota.

In *Ex parte Schollenberger,* 6 Otto, 369, the Supreme Court of the United States considered a statute of the State of Pennsylvania providing for the service of process issued "by any court of the commonwealth having jurisdiction of the subject matter," and it was held that as the circuit court of the United States for the eastern district of Pennsylvania was a court within the commonwealth it was a court of the commonwealth, within the meaning of that statute. The territorial jurisdiction of the circuit court there did not include the entire commonwealth, yet that court was determined to be a "court of the commonwealth." It would seem to follow that the city court should be regarded as a court of record of the county although the entire county is not within the territorial jurisdiction of that court.

In *Ivey* v. *State,* 112 Ga. 175, the Supreme Court of Georgia construed the enacting clause of a statute which declared that "the city court of Macon is hereby established and created with civil and criminal jurisdiction over the whole county of Bibb," and it was there said the fair inference was "that the preposition 'of' was used as being synonymous with the preposition 'in,' and that the word 'of' was used to indicate that the city court should be a resident of the city and located therein."

We think these cases support our construction of the Illinois statute from which we have above quoted, and that they should be given controlling effect.

Appellant, a foreign corporation, contends, however, that section 3 of chapter 110, Hurd's Revised Statutes of 1905, if applied to city courts, is unconstitutional. Among the generally accepted doctrines in relation to foreign corporations the following are well established: The legislature may impose on them such terms and conditions as it chooses before they may enter this State at all to transact business here. Foreign corporations come into the State as a matter of grace and comity, and they may be entirely prohibited from doing business in the State. (*Pierce* v. *People,* 106 Ill. 11; *Hazelton Boiler Co.* v. *Tripod Boiler Co.* 142 id. 494; *Walker* v. *City of Springfield,* 94 id. 364; *Cincinnati Mutual Health Assurance Co.* v. *Rosenthal,* 55 id. 85; *Rhodes* v. *Missouri Savings and Loan Co.* 173 id. 621.) All such regulations the domestic State enforces through its police power. (Tiedeman on Limitations on the Police Power, sec. 193.) The grant of privileges and powers to a foreign corporation, without more, does not make it a domestic corporation. (*Pennsylvania Railroad Co.* v. *St. Louis, etc. Railroad Co.* 118 U. S. 290.) And, to descend to one or two particulars, it has been doubted whether a foreign corporation can sue in this State for libel, though it is well settled that such an action may be maintained by a domestic corporation. (*Hahnemannian Life Ins. Co.* v. *Beebe,* 48 Ill. 87.) The General Assembly has power to impose taxation on a foreign corporation to whatever extent it may, in its discretion, choose, as a condition upon which the corporation shall be allowed to exercise its franchises and privileges in the State. *Western Union Telegraph Co.* v. *Lieb,* 76 Ill. 172; *Ducat* v. *City of Chicago,* 48 id. 172; *Ducat* v. *City of Chicago,* 10 Wall. 410.

The necessary deduction from these adjudications is that the State may discriminate against the foreign corpo-

ration, and require that, in transacting its business in this State, it submit to and comply with conditions from the burden of which domestic corporations are entirely free.

We therefore conclude that the appellant should not be heard to question the constitutionality of the statute last referred to, and that the judgment of the city court of Chicago Heights should be affirmed.