## WILLIAM A. MILLER

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 4, 1907—Rehearing denied December 4, 1907.*

1. CONSTITUTIONAL LAW—*words of amendment are presumed to have been used in their ordinary meaning.* The General Assembly in proposing an amendment to the constitution, and the people of the State in adopting it, are presumed to have used the words of the amendment in their natural and ordinary meaning.

2. SAME—*judicial construction of provision follows the re-incorporation of such provision in new constitution.* Where a constitutional provision has received a settled judicial construction, it will be presumed, where such provision is re-incorporated in a new or revised constitution, that it was retained with knowledge of the construction placed upon it, and the courts will adhere to such construction.

3. SAME—*extent to which an amendment abrogates other provisions of the constitution.* In case of an amendment of the contitution, other provisions of the constitution are only affected or modified in so far as is necessary to give effect to the amendment.

4. SAME—*the amendment of 1904 did not change constitutional provision respecting changes of venue.* The amendment of 1904, adding section 34 of article 4 to the constitution, did not change or modify, by implication, the provision of the constitution prohibiting the enactment of any special or local law providing for changes of venue.

5. SAME—*General Assembly cannot extend jurisdiction of a municipal court beyond territorial limits of city.* The General Assembly has no power to extend the jurisdiction of a city or municipal court beyond the territorial limits of the city wherein the court is located, and in so far as sections 2 and 24 of the Municipal Court act may be regarded as purporting to confer jurisdiction upon the municipal court of Chicago to try cases arising beyond the territorial limits of the city they are without constitutional authority.

6. COURTS—*municipal court of Chicago is merely a city court.* The municipal court of Chicago is a local court of the city, established for the purpose of administering the law within the city, and is not a part of the judicial department of the State at large, and hence has no jurisdiction to try a case transferred to it under section 24 of the Municipal Court act from the criminal court of Cook

230—5

county and which is not alleged in the indictment to have arisen within the territorial limits of the city.

7. Same—*scope of jurisdiction of municipal court of Chicago.* The municipal court of Chicago is a proper part of the city government for the enforcement of city ordinances, and as a part of such government it may be given jurisdiction for the purpose of enforcing all laws within the city.

Writ of Error to the Municipal Court of Chicago; the Hon. Fred L. Fake, Judge, presiding.

Charles E. Erbstein, and Charles P. R. Macaulay, for plantiff in error:

The municipal court of Chicago is a court of inferior limited jurisdiction. *Reid* v. *Morton,* 119 Ill. 118; *In re Schultes,* 54 N. Y. Supp. 34; *Shaffel* v. *State,* 97 Wis. 377.

It is a creature of the statute, and has no jurisdiction except such as is conferred by law. *Weinstein* v. *Douglas,* 101 N. Y. Supp. 251; *Morin* v. *Claflin,* 100 Me. 271.

The municipal court can have jurisdiction only in Chicago. *Chicago* v. *Reeves,* 220 Ill. 274; *Supreme Hive* v. *Harrington,* 227 id. 511; *In re City of Buffalo,* 139 N. Y. 422; *Landers* v. *Railroad Co.* 53 id. 450.

Courts established by the constitution cannot be authorized by statute to transfer their business to other courts. *Alexander* v. *Bennett,* 60 N. Y. 204; *Zander* v. *Coe,* 5 Cal. 230; Const. art. 6, secs. 12, 26; *Hankins* v. *People,* 106 Ill. 628; *Wilson* v. *People,* 94 id. 426.

The constitutional amendment of 1904 was not intended to authorize special legislation for Cook county or its courts of record. Const. art. 14, sec. 2, and art. 6, sec. 29; *Ashbrook* v. *Schaub,* 160 Mo. 107.

The legislation as to the jurisdiction, powers, proceedings and practice of the courts of record of Cook county is not embraced in the title, "An act in relation to a municipal court in the city of Chicago." *Allardt* v. *People,* 197 Ill. 501; *Milne* v. *People,* 224 id. 125; *Dolese* v. *Pierce,* 124 id. 140.

If the section of the statute authorizing the transfer of cases from the courts of Cook county to the municipal court of Chicago is invalid, the municipal court has no jurisdiction to try Cook county indictments for felony transferred to it, even if the parties consent. *Floto* v. *Floto,* 213 Ill. 438; *Mansfield* v. *Mansfield,* 203 id. 92; *Demilly* v. *Grosrenaud,* 201 id. 272.

W. H. STEAD, Attorney General, and JOHN J. HEALY, State's Attorney, (WILLIAM A. RITTENHOUSE, and HIRAM T. GILBERT, of counsel,) for the People:

The constitutional amendment of 1904 controls all prior provisions of the constitution in conflict with it. *Moore* v. *People,* 106 Ill. 376; *Huston* v. *Clark,* 112 id. 344; *Hyde Park* v. *Spencer,* 118 id. 446; *Railway Co.* v. *Drainage District,* 194 id. 310.

The constitutional amendment abrogated in the city of Chicago the uniformity in jurisdiction and practice in courts of the same grade provided for by section 29 of article 6 of the constitution.

The constitutional amendment of 1904 conferred upon the General Assembly unlimited power as to prescribing the jurisdiction and practice of the municipal court. Whether the jurisdiction conferred on the municipal courts is more extensive than it should be, or whether the practice prescribed is suitable, or, in the case of a local municipal government act not pertaining to the municipal courts, whether it is one which is requisite to effectually provide a complete system of local municipal government for Chicago, is purely a legislative question, with which the courts have nothing to do. *Owners of Lands* v. *People,* 113 Ill. 296; *Sanitary District* v. *Ray,* 199 id. 163; *Thompson case,* 155 id. 451.

The power to hear and determine a cause is jurisdiction. The mode and order of procedure in obtaining compensation for injury by action or suit in the legally established courts,

from the inception of such suit until it ends in the final determination of the court of last resort, is all comprehended in the term "practice." *Fleischman* v. *Walker,* 91 Ill. 318.

The effect of the constitutional amendment is to declare that the municipal courts shall have whatever power, whether limited or unlimited, with respect to the determination of controversies between litigants, the General Assembly may see fit to invest in them; and that the General Assembly, with respect to the causes of which it may give the municipal courts jurisdiction, may prescribe any mode and order of procedure, from the inception of such suits until they end in final determination in the court of last resort, that the General Assembly shall deem proper.

There is no limit to the territorial jurisdiction which the General Assembly may prescribe for the municipal courts. It has been decided that section 1 of article 5 of the constitution of 1848 did not permit the General Assembly to confer upon city courts power to obtain jurisdiction of a defendant by service of its process of summons upon him beyond the limits of the city. *People* v. *Evans,* 18 Ill. 362; *Covill* v. *Phy,* 26 id. 432; *Holmes* v. *Fihlenberg,* 54 id. 203; *Dixon* v. *Dixon,* 61 id. 325; *People* v. *Auditor,* 67 id. 333; *Joslyn* v. *Dickerson,* 71 id. 25.

It has been assumed, but not decided, by this court that section 1 of article 6 of the constitution of 1870 in this particular is to be construed in the same way as section 1 of article 5 of the constitution of 1848, though the latter describes city courts as "inferior local courts of civil and criminal jurisdiction * * * established by the General Assembly in the cities of this State," while the former describes them as "such courts as may be created by law in and for cities and incorporated towns." *Miller* v. *People,* 183 Ill. 423; *Supreme Hive* v. *Harrington,* 227 id. 511.

Section 1 of article 6 of the constitution of 1870 does not prohibit the General Assembly from conferring jurisdiction upon a city court organized under the general law, to

send its process of summons beyond the territorial limits of the city of which it is created. This court has held that in a case where a city court had jurisdiction to render a judgment, it might issue its writ of execution to enforce it to a foreign county; that a cause might be transferred by a change of venue from a circuit court to a city court in another county, or from a city court in one city to a city court in another city; that a city court might be given jurisdiction to authorize a guardian's sale of land situated without the city, and that a city court could lawfully summon grand jurors from any part of the county in which the court was situated. *People* v. *Barr*, 22 Ill. 241; *Lowry* v. *Coster*, 91 id. 182; *Railway Co.* v. *Enright*, 152 id. 246; *Reid* v. *Morton*, 119 id. 118; *Miller* v. *People*, 183 id. 423.

The constitutional amendment of 1904 declares that in case the General Assembly creates municipal courts and abolishes the offices of justices of the peace, etc., "the jurisdiction and practice of said municipal courts shall be such as the General Assembly shall prescribe." There is no warrant for construing this language to mean what it would mean if it read, "the jurisdiction within the territory of the city of Chicago * * * of said municipal courts shall be such as the General Assembly shall prescribe."

The provisions for the transfer of cases to the municipal court from the criminal court of Cook county are valid, regardless of whether the crimes therein involved are alleged to have been committed beyond the limits of the city of Chicago. The transfer of a case from the criminal court of Cook county to the municipal court of Chicago, provided for in the act, is nothing more nor less than a change of venue, and the power of the General Assembly with respect to changes of venue is unlimited, excepting that in a criminal case, without the consent of the defendant, a change of venue to a court in a county other than that in which the crime alleged to have been committed is not permissible, because it is forbidden by section 9 of article 2 of the consti-

tution, which entitles the defendant to "a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed." The fact that a suit could not have been originally brought and prosecuted in the court to which it is transferred by a change of venue is no objection to the granting of such change of venue. *Lowry* v. *Coster,* 91 Ill. 182; *Railway Co.* v. *Enright,* 152 id. 246.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

An indictment was returned into the criminal court of Cook county, the first count of which charged that plaintiff in error, on September 1, 1905, in said Cook county, committed larceny of a rug of the value of $235, the property of John M. Symth Company, a corporation. The second count charged plaintiff in error with buying, receiving and aiding in concealing the said rug in said Cook county knowing the same to have been feloniously stolen. To these counts an habitual criminal count was added. On motion of the State's attorney of Cook county the criminal court ordered the cause transferred for trial and disposition from the criminal court to the municipal court of the city of Chicago, and the files of the cause were transmitted to the clerk of said municipal court. Plaintiff in error was arraigned in the municipal court\and his plea was not guilty. The State's attorney waived trial on the habitual criminal count and a trial on the remaining counts resulted in a verdict of guilty. Motions for a new trial and in arrest of judgment were made and overruled and the court sentenced plaintiff in error to the penitentiary. He sued out a writ of error from this court to the municipal court, and the record has been brought here for review.

The jurisdiction of the municipal court to try the cause and sentence plaintiff in error to the penitentiary is disputed upon the ground that the jurisdiction of that court is con-

fined to the city limits of the city of Chicago, and, although the assignment of errors includes jurisdictional questions and matters relating to the record and proceedings of the court in the cause, the question of the territorial jurisdiction of the court is the only one that will be considered. If the jurisdiction of the municipal court is confined to the city of Chicago and does not extend to the whole county of Cook it was without jurisdiction to try plaintiff in error upon an indictment charging an offense committed at and within said county and which did not allege an offense committed within the jurisdiction of the court, and the other questions are thereby rendered immaterial.

Section 34 of article 4 of the constitution, which was added by an amendment adopted in 1904, does not, in terms, provide that the General Assembly may create municipal courts in the city of Chicago, but it does confer upon the General Assembly power to pass any law providing a scheme or charter of local municipal government for the territory embraced within the limits of said city, and provides, in case the General Assembly shall create municipal courts in the city of Chicago, it may abolish the offices of the justices of the peace, police magistrates and constables in and for the territory within said city and may limit the jurisdiction of justices of the peace in the territory of said county of Cook outside of said city to that territory, and in such case the jurisdiction and practice of said municipal courts shall be such as the General Assembly shall prescribe. The authority given is to provide a scheme or charter of local municipal government for the territory within the limits of the city, and it is only for the reason that municipal courts constitute a proper part of the local municipal government that they are authorized by the amendment. By virtue of that amendment of the constitution the General Assembly passed an act entitled "An act in relation to a municipal court in the city of Chicago," in force July 1, 1905, by which a court was established in and for

the city of Chicago styled "The municipal court of Chicago," and the offices of justices of the peace, police magistrates and constables in and for the territory within the city of Chicago were abolished and the jurisdiction of justices of the peace in the territory of the county of Cook outside of the city of Chicago was limited to the territory of said county outside of said city. The question of the validity of that act was considered in the case of *City of Chicago* v. *Reeves,* 220 Ill. 274. The conclusions reached were, that the creation of a municipal court in and for the city of Chicago was germane to the establishment of local municipal government in said city; that the establishment of such a court was a proper and legitimate part of a general scheme of local municipal government for the territory embraced within the limits of the city; that the municipal court was designed to occupy the field in jurisprudence previously occupied by justices of the peace and police magistrates in the city, and that it was germane to the object of the amendment to abolish the offices of justices of the peace, police magistrates and constables in the city and to limit the jurisdiction of justices of the peace in Cook county to territory outside of the city. The controlling question in that case was whether the amendment of 1904 was a valid amendment, and it was held to be a valid constitutional amendment, and the Municipal Court act, passed in pursuance of it, to be in its main features a valid enactment. A number of the provisions of the act were called in question in the briefs, but little, if anything, was said with reference to them in the argument, and it was deemed better to determine such questions as they might arise and decide them upon fuller argument than was presented in the arguments in that case.

In this case the validity of sections 2 and 24 of the Municipal Court act is challenged so far as they are claimed to authorize the municipal court to try cases transferred to it from the criminal court of Cook county arising be-

yond the territorial limits of the city, and to exercise all the powers with respect to any case so transferred which the criminal court of Cook county might have exercised had the case not been transferred. Section 2 provides that said municipal court shall have jurisdiction within the city of Chicago in five classes of cases enumerated therein. The second class includes criminal cases which may be transferred to the municipal court, by change of venue or otherwise, by the criminal court of Cook county for trial and disposition; but the jurisdiction conferred by that section is jurisdiction only within the city of Chicago, which means within the territorial limits of said city, and the language is not broad enough to give the court jurisdiction of a case transferred by the criminal court of Cook county which did not arise within the city. What jurisdiction the municipal court might have in the case of a change of venue under the statute authorizing such change on the application of the defendant is not involved in this case. Section 24 provides that the criminal court of Cook county may, in its discretion, upon the request of the State's attorney or of any defendant, transfer to the municipal court for trial and disposition any case pending in said criminal court, and that said municipal court, when any case shall have been transferred to it, shall exercise all the powers with respect to the trial and disposition of said case which the said criminal court of Cook county might have exercised had said case not been so transferred. Taking the two sections together, there is at least doubt whether the General Assembly intended to extend the jurisdiction of the municipal court beyond the limits of the city by virtue of such provisions. Waiving that question, however, and assuming, as counsel on both sides do, that the intention of the General Assembly was to give the municipal court jurisdiction throughout Cook county in cases transferred to it, the question to be determined is whether the General Assembly had power to confer such jurisdiction.

The General Assembly in proposing and the people in adopting the amendment of 1904 are presumed to have used the words "municipal courts" in their natural and ordinary meaning. (*Hills* v. *City of Chicago,* 60 Ill. 86; *City of Beardstown* v. *City of Virginia,* 76 id. 34; 8 Cyc. 729; Cooley's Const. Lim. 58.) The word "municipal" is defined by all authorities as meaning of or pertaining to a city or corporation having the right to administer local government. The municipal court of the city of Chicago is therefore one which pertains to the corporate or local government of the city and the administration of the law within the city. We held in *City of Chicago* v. *Reeves, supra,* that municipal courts are a proper part of the local government, and such courts are generally given exclusive jurisdiction for violations of municipal ordinances. Whether the municipal court of Chicago can be given exclusive jurisdiction in any case is not here involved. It is a proper part of the city government for the enforcement of city ordinances, and as a part of such city government it may be given jurisdiction for the purpose of enforcing all laws within the city. Municipal courts may be invested with jurisdiction of prosecutions for crimes and misdemeanors occurring within the municipality and may also be given civil jurisdiction. They are limited, territorially, to the municipality in and for which they are created, and their jurisdiction is usually limited in amount or to petty offenses. (Black's Law Dict.; 21 Am. & Eng. Ency. of Law,—2d ed.—1.) Under the rule that the words "municipal courts" were used in the amendment in their ordinary and natural meaning, the municipal court of Chicago is to be regarded as a local court of the city, established for the purpose of administering the law within the city, and not as a part of the judicial department of the government of the State at large. It was because we were convinced of the correctness of that view that we were enabled to hold the amendment to be single in character, relating to but one subject, and to sus-

tain the amendment and the main features of the Municipal Court act. This leads to the conclusion that the authority conferred upon the General Assembly by the amendment was to establish municipal courts with civil and criminal jurisdiction confined to the limits of the municipality.

There is another rule of construction which, in itself, would necessitate a decision that the municipal court has no jurisdiction beyond the limits of the city of Chicago. The rule is, that where a constitutional provision has received a settled judicial construction and is afterward incorporated into a new or revised constitution it will be presumed to have been retained with a knowledge of that construction, and the courts will feel bound to adhere to it. (8 Cyc. 739.) There is no substantial or material difference between the terms "city court" and "municipal court," both of which are courts of the municipality in which they are established, and the constitution of 1848, as well as the present constitution, provided for the establishment of such courts. It was repeatedly held before the adoption of this amendment, in cases arising under each of those constitutions, that the General Assembly had no power to extend the jurisdiction of courts of that character beyond the territorial limits of the municipality. The constitution of 1848 vested the judicial power of the State in one Supreme Court, in circuit courts, in county courts and in justices of the peace, provided that inferior local courts of civil and criminal jurisdiction might be established by the General Assembly in the cities of the State. Under that constitution an act was passed in 1857 establishing the recorder's court of the cities of LaSalle and Peru. The question of the constitutionality of the act was before this court in the case of *People* v. *Evans,* 18 Ill. 361. The court, speaking by Mr. Justice Caton, held that the constitution limited the territorial jurisdiction of courts established in the cities of the State to cities within which they were established; that they were intended to be for the benefit of the cities and designed to

be local courts, and that if it were competent for the General Assembly to extend the jurisdiction of such a court to two towns it would be equally competent to extend it to the whole county 'or even to the whole State. It was decided that the General Assembly transcended its constitutional power in the establishment of the court.

In *Covill* v. *Phy,* 26 Ill. 432, Mr. Justice Walker delivered the opinion of the court, and it was held that the common pleas court of the city of Aurora had no jurisdiction of an action which accrued outside of the city limits; that the court had no jurisdiction to send original process beyond the limits of the city, and that the General Assembly did not have constitutional power to extend the jurisdiction of the court beyond such limits.

In *Holmes* v. *Fihlenburg,* 54 Ill. 203, in which Mr. Chief Justice Lawrence delivered the opinion, it was held that the court of common pleas of the city of Sparta could not acquire jurisdiction of the person of a defendant by the service of summons beyond the city limits. Mr. Justice Sheldon, speaking for the court in *Gardner* v. *Witbord,* 59 Ill. 145, said that the territorial jurisdiction of the same court of common pleas of the city of Sparta was limited by the constitution to said city.

In the case of *Dixon* v. *Dixon,* 61 Ill. 324, in a per curiam opinion it was held that the court of common pleas of the city of Amboy had no power to send its original process beyond the limits of the city.

In *Joslyn* v. *Dickerson,* 71 Ill. 25, Mr. Justice Scholfield delivered the opinion of the court, again holding that the court of common pleas of the city of Elgin had no jurisdiction beyond the limits of said city.

In *Reid* v. *Morton,* 119 Ill. 118, the opinion was delivered by Mr. Justice Sheldon, and the court adhered to previous decisions as to the territorial limits of the city court of Alton, but it was held that the court had power to order the sale of a ward's land beyond the city limits by his guard-

ian.  The ground of the decision was, that the term "juris-
diction" related only to the exercise of powers judicial in
their nature, and that to order a sale of land by a guardian
did not fall within the province of judicial action, but was
analogous to the powers exercised by the British parliament
on similar subjects.  The question whether a sale should be
ordered was regarded as one which a court might be au-
thorized to consider and pass upon, and that, the ward re-
siding in the city of Alton, the power might be given to
the court to order a sale by the guardian.  It was said that
making the city court a court of record did not make it a
superior and not an inferior court, within the meaning of
the constitution.

These decisions established and settled the construction
to be given to a provision of the constitution authorizing the
General Assembly to create courts in and for the munici-
palities.  It is argued, however, that some other decisions
tend to establish the doctrine that the jurisdiction of a mu-
nicipal court may be extended beyond the city limits.  In
the case of *People* v. *Barr*, 22 Ill. 241, it was held that when
jurisdiction of a cause had once attached and had been law-
fully exercised by the court of common pleas of the city of
Aurora the court might issue process beyond the limits of
the city to aid in enforcing the judgment; and in *Miller* v.
*People*, 183 Ill. 423, it was decided that the act for select-
ing grand jurors from the county applied to the city courts
organized under the act of 1874, which was passed under
the present constitution.  The provision of the constitution
now in force is, that the judicial powers shall be vested in
one Supreme Court, circuit courts, county courts, justices
of the peace, police magistrates, and such courts as may
be created by law in and for cities and incorporated towns.
Neither of these cases supports the claim that a city has
jurisdiction beyond such limits.  A city court having ac-
quired jurisdiction may send its process in aid of that juris-
diction beyond the city limits, and may send its final process

outside of the city. to enforce collection of its judgment. The doctrine that the jurisdiction of a city court for service of original process is confined to the city limits wherein the court is located, and that the General Assembly has no power to pass a law extending such jurisdiction beyond the city, was re-affirmed in the case of *Ladies·of Maccabees* v. *Harrington*, 227 Ill. 511, which arose under the present constitution. In these cases the courts were called courts of common pleas, city courts or a recorder's court, but they were all municipal courts under various names, and were the same kind of courts as the municipal court of Chicago. It must be held that the General Assembly in proposing and the people in adopting the amendment had in view the construction.uniformly given by this court as to territorial limits of the city or municipal courts.

It is argued that the transfer of a cause under the Municipal Court act is merely a change of venue, and that a change of venue may be taken to a court which could not originally have entertained the suit. The provisions of the Municipal Court act do not come within the purview of the act authorizing a change of venue in criminal cases, which can only be granted upon the application of the defendant, and it is clear that the transfer in this case was not a change of venue. Furthermore, the constitution prohibits the enactment of any local or special law providing for changes of venue in civil and criminal cases. Other provisions of the constitution are only affected or modified by the amendment of 1904 so far as necessary to give effect to that amendment, and the provision prohibiting local or special laws providing for changes of venue was not changed by implication by the amendment.

It is further argued that the decision of the court as to territorial jurisdiction of city courts should not be adhered to because inconsistent with what has been held in relation to justices of the peace. The constitution provides that justices of the peace shall be elected in and for such districts

as are or may be provided by law, and the law provides that they shall be elected in and for towns in counties under township organization and in election precincts of counties not under township organization. Their jurisdiction has always been recognized as extending throughout the county, and counsel contend that the rule of construction adopted as to city courts would require us to limit justices of the peace to their own towns or election precincts. If there were any inconsistency it would not justify a departure from the doctrine as to territorial limits of the city courts adhered to for a great length of time and founded upon what we conceive to be good reasons. But we do not regard the decisions as inconsistent. By the constitution of 1818 a competent number of justices of the peace were to be appointed in each county, whose powers and duties were to be regulated and defined by law. The constitution of 1848 provided that there should be elected in each county in such districts as the General Assembly might direct, a competent number of justices of the peace, who should exercise such jurisdiction as might be prescribed by law. In the case of *People* v. *Meech,* 101 Ill. 200, the court said: "At the time the constitution was adopted the territorial jurisdiction of justices of the peace was co-extensive with their counties throughout the State and has ever been since the organization of the government, and the constitution adopts that division until a change shall be made, which it authorizes, with the limitation that when made the jurisdictional districts shall be uniform." It was held that each county in the State constitutes but one district, and we do not regard the decisions as inconsistent or in conflict with each other.

The judgment of the municipal court is reversed.

*Judgment reversed.*