(No. 15673.—Judgment reversed.)

THE PEOPLE *ex rel.* Dennis J. Egan, Bailiff, Appellee, *vs.*
THE CITY OF CHICAGO *et al.* Appellants.

*Opinion filed December 19, 1923—Rehearing denied Feb. 8, 1924.*

1. CONSTITUTIONAL LAW—*what corporate authorities may be given power to impose taxes.* Under sections 9 and 10 of article 9 of the constitution, prohibiting the legislature from imposing taxes upon municipal corporations but providing that it may invest corporate authorities with such power, the corporate authorities intended are such as have been elected directly by the people of the taxing district or appointed in some mode to which the people have given their consent.

2. SAME—*judges of municipal court are corporate authorities with power to incur municipal indebtedness.* The provision of section 17 of the Municipal Court act that the judges shall fix the number of deputy bailiffs and the amount of their salaries, subject to the limitation in the act, does not violate the provision of the constitution prohibiting the legislature from imposing taxes on municipal corporations, as the judges of the municipal court have, by consent of the people in adopting the Municipal Court act, become corporate authorities with power to incur indebtedness on the part of the city for expenses of the court, for which it is the duty of the city council to provide by appropriation and the levy of taxes.

3. SAME—*amendments to Municipal Court act must be submitted to the people.* Under section 34 of article 4 of the constitution no law affecting the municipal government of the city of Chicago shall take effect "until such law shall be consented to by a majority of the legal voters of said city;" and this constitutional provision requires a referendum of all proposed amendments to the Municipal Court act, notwithstanding the act itself has been adopted by vote of the people. (*Waugh* v. *Glos,* 246 Ill. 604, and *Fields* v. *Lueders,* 274 id. 562, distinguished.)

4. SAME—*section 17 of Municipal Court act is not invalid as amending Cities and Villages act.* The fact that section 17 of the Municipal Court act may by implication amend certain provisions of the Cities and Villages act does not violate the constitutional provision which requires the sections amended to be inserted in the amendatory act, as it is only where the law professes to be amendatory or is amendatory in its nature that the constitutional provision applies, and not where it is a part of an independent act.

5. FEES AND SALARIES—*section 17 of the Municipal Court act, as passed in 1907, controls salaries of deputy bailiffs.*  Section 17 of the Municipal Court act, as passed in 1907 and adopted by vote of the people in that year, controls as to the salaries of deputy bailiffs of the municipal court, and subsequent amendments to the act in 1919, 1921 and 1923 are void because they were never submitted to a popular vote.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH B. DAVID, Judge, presiding.

FRANCIS X. BUSCH, (LEON HORNSTEIN, and RUTH C. NELSON, of counsel,) for appellants.

JOHN F. POWER, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The superior court of Cook county overruled a demurrer of the city of Chicago and its mayor and aldermen to a petition praying for a writ of *mandamus* requiring them to pass an additional appropriation ordinance for the payment of the salaries of twenty-four deputy bailiffs of the municipal court of Chicago, and upon their election to stand by their demurrer it entered a judgment awarding the writ, from which they appealed.

The municipal court of Chicago, now consisting of thirty-six judges elected in the city of Chicago, was created by an act of the legislature in 1905 under the authority of section 1 of article 6 of the constitution and the amendment proclaimed adopted on December 5, 1904, and known as section 34 of article 4. The act creating the court created the office of bailiff, and section 17 provided that the bailiff should appoint deputies of such number and at such salaries as might be fixed from time to time by orders signed by a majority of the judges and spread upon the records of the court, the salaries to be payable out of the city treasury in monthly installments, provided the salary of the chief deputy bailiff should not exceed $2500 per annum and

the salary of no other deputy bailiff should exceed $1500 per annum. This act was submitted to a vote of the people and was consented to by a majority of the voters at the general election held in November, 1905, in accordance with the requirement of section 34 of article 4. Section 17 was amended in 1907 so as to provide that the salary of the chief deputy bailiff should be $4000 per annum and the salary of the assistant chief deputy bailiff should be $2500 per annum but leaving the provision in regard to the salaries of other deputy bailiffs unchanged. (Laws of 1907, p. 225.) This amendment was also submitted to a vote of the people and was consented to by a majority of the voters. An act for further amending this section by raising the maximum for the salaries of deputy bailiffs other than the chief deputy and assistant chief deputy to $2000 was passed by the legislature in 1919, but no provision was made for submitting it to a vote of the people and therefore it did not become effective. (Laws of 1919, p. 409.) On March 2, 1923, an order signed by a majority of the judges of the municipal court was spread upon the records of the court authorizing the bailiff to appoint a chief deputy bailiff at a salary of $4000, an assistant chief deputy bailiff at a salary of $3000, and 212 deputy bailiffs at various salaries ranging from $1650 to $2000. The city council was notified of this order and requested to make an appropriation of the amounts mentioned, but the appropriation ordinance passed contained appropriations for the salaries of the chief deputy bailiff, the assistant chief deputy bailiff and only 191 deputy bailiffs instead of 212. The petition set forth these facts and prayed for a writ of *mandamus* requiring the council to make appropriations for the salaries of the omitted deputy bailiffs.

The objections which are made to the petition are, that section 17 violates sections 9 and 10 of article 9 of the constitution because it imposes obligations and taxes for local purposes by other than the corporate authorities upon the

people of the city; that it violates section 13 of article 4 because it amends various provisions of the Cities and Villages act in relation to the fixing of salaries and the number of employees of the city without setting out the sections amended; and that the amendment of 1919 is unconstitutional because not submitted to a referendum.

Sections 9 and 10 of article 9 provide that the General Assembly may vest the corporate authorities of cities, towns and villages with authority to assess and collect taxes for corporate purposes but shall not itself impose taxes upon municipal corporations, or the inhabitants or property thereof, for corporate purposes. Similar provisions in section 5 of article 9 of the constitution of 1848 were held to be a prohibition to the legislature from granting the power to assess and collect taxes to any other than the corporate authorities of the municipality to be taxed or from compelling a municipality to incur a debt without its consent. (*People* v. *Mayor of Chicago,* 51 Ill. 17; *People* v. *Salomon,* id. 37; *Harward* v. *St. Clair and Monroe Drainage Co.* id. 130.) Since the adoption of the constitution of 1870, sections 9 and 10 of article 9 have received the same construction, and have always been held to prohibit the legislature from imposing taxes on the people of any district or granting power to do so to any other than corporate authorities of the district to be taxed, and the corporate authorities intended are such as have been elected directly by the people of the district or appointed in some mode to which they have given their consent. *Updike* v. *Wright,* 81 Ill. 49; *Dunham* v. *People,* 96 id. 331; *Cornell* v. *People,* 107 id. 372; *Wetherell* v. *Devine,* 116 id. 631; *Herschbach* v. *Kaskaskia Island Sanitary District,* 265 id. 388.

The appellants contend that the judges of the municipal court fix the number of deputies and the amount of their salaries and by that act impose upon the city an obligation which can only be removed by taxation, but that they are

not corporate authorities and the city cannot be compelled to meet by taxation the debt thus sought to be forced upon it. Corporate authorities have been defined in the decisions of this court as those officers who are either directly elected by the population to be taxed or are appointed in some mode to which the people have given their consent. (*Harward* v. *St. Clair and Monroe Drainage Co. supra; Cornell* v. *People, supra; Wetherell* v. *Devine, supra.*) The Municipal Court act was adopted by a vote of the people of the city of Chicago. By this action they consented to the manner in which the number and salaries of the deputy bailiffs were to be fixed, and the judges to whom was committed that power became for that purpose the corporate authorities contemplated by the sections of the constitution cited. It was said in *People* v. *Salomon, supra:* "There is no prohibition which we have been able to discover, and we have been pointed to none, against the creation by the legislature of every conceivable description of corporate authority, and when created to endow them with all the faculties and attributes of other pre-existing corporate authorities. Thus, for example, there is nothing in the constitution of this State to prevent the legislature from placing the police department of Chicago or its fire department or its water-works under the control of an authority which may be constituted for such purpose by a vote of the people, and endow it with power to assess and collect taxes for their support and confide to it their control and government. Section 5 of article 9 would not be violated thereby, because the authority thus established would be a corporate authority, and the purposes for which taxes could be assessed are undeniably corporate." The judges of the municipal court have by the consent of the people become corporate authorities, not with power to assess and collect taxes, but with control, so far as the law has confided it to them, of the expenses of the court and with power to incur indebtedness on the part of the city for that purpose, for which it is the

duty of the city council to provide by the appropriation of money to pay it and the levy of taxes for that purpose.

The case of *People* v. *Salomon, supra,* involved the extension of the taxes of the South Park Commissioners, while *People* v. *Mayor of Chicago, supra,* involved the issue of bonds of the city of Chicago on the demand of the commissioners of Lincoln Park, and the two cases illustrate the application of the principle now under consideration, for, as was said in the former case, the legislature undertook in the Lincoln Park case to compel the people of Chicago to incur a debt without either their own consent or that of their corporate authorities, for it was impossible to hold that the commissioners of that park were corporate authorities of the city of Chicago; while in the South Park case the people of the towns of South Chicago, Hyde Park and Lake, by voting for the law, made the commissioners corporate authorities of the towns and empowered them to assess the requisite tax upon the property of the towns. The tax was really self-imposed by agents not directly named by the people but by the Governor by virtue of authority conferred by their vote.

The amendment of the constitution (section 34 of article 4) authorized the General Assembly to pass any law, local, special or general, providing a scheme or charter of local municipal government for the city of Chicago. It recognized the municipal courts authorized to be created in the city of Chicago as a part of the local municipal government, and provided that "no law based upon this amendment to the constitution, affecting the municipal government of the city of Chicago, shall take effect until such law shall be consented to by a majority of the legal voters of said city voting on the question at any election, general, municipal or special." Section 29 of article 6 of the constitution requires all laws relating to courts to be general and of uniform operation. One object in the adoption of the amendment was to authorize local and special legislation in rela-

tion to a municipal court in Chicago, to the abolishment of the offices of justices of the peace, police magistrates and constables within the city, and to the jurisdiction of justices of the peace in Cook county. The act in relation to a municipal court in the city of Chicago is local and special, and acts which are merely amendatory of it are necessarily local and special. They relate to a department of the municipal government of the city and therefore affect the municipal government, and they are based upon the amendment of the constitution, because without that amendment no special law relating to the municipal court can be passed. Therefore no amendment of the Municipal Court act can take effect until it shall have been assented to by a majority of the legal voters of the city voting at a general, municipal or special election. The General Assembly acted upon this hypothesis for many years and attached the requirement of a referendum to all proposed amendments until 1919. Amendments were submitted to the people, voted on and adopted in 1907 (Laws of 1907, p. 225,) and in 1917. (Laws of 1917, pp. 329, 333.) Other amendments were submitted, voted on and defeated in 1911 (Laws of 1911, pp. 255, 260,) and in 1915, (Laws of 1915, p. 360,) and in 1913 a general revision of the act was passed by the legislature, approved by the Governor and submitted to the people but was defeated. (Laws of 1913, p. 212.) In 1919, 1921 and 1923 amendments were passed by the General Assembly omitting the formality of a referendum. (Laws of 1919, pp. 409, 411; Laws of 1921, p. 393; Laws of 1923, pp. 307, 310.) These acts of the General Assembly are ineffective. In passing them it assumed an authority expressly denied to it by the amendment to the constitution. The intention of the amendment is manifestly that the powers conferred by it on the General Assembly shall be exercised subject to the right of the people of the city to reject the result. The General Assembly has not

the final power, but its legislation, so far as it is based on this amendment, is subject to a veto by an adverse popular vote.

It is argued that although the original law required a favorable vote before going into effect, yet when it did go into effect it was the act of the legislature and is subject to amendment or repeal by the legislature without such vote. *Waugh* v. *Glos,* 246 Ill. 604, and *Fields* v. *Lueders,* 274 id. 562, are cited in support of this contention. In the former case the validity of an amendment to the Torrens law was questioned. That act provided that it should not apply to land in any county until adopted by a vote of the people of the county, and it was contended that a subsequent amendment was subject to the same proviso, but it was held not so. The legislature had power to pass the law without any vote and it derived its force from the act of the legislature. The vote merely complied with a condition which the legislature had required to the going into effect of the law. The principle is the same in the other case. It has no application here, where the legislature is powerless to give effect to the law without a vote of the people. The amendment requires both the act of the legislature and the vote of the people before any law based upon the amendment affecting the municipal government can take effect. The same act and vote must again concur before a law changing the previous one can take effect. It would be an entire perversion of the amendment, which was intended to confer on the people of Chicago control of legislation affecting their local government, if they should now learn that the whole power of such control is now in the legislature; that having once adopted an act they were without power to prevent the legislature from entirely changing their scheme of government. The necessity of the referendum if they would retain the control of local government is shown by the legislation which has been cited which has been rejected.

It is contended that section 17 amends the Cities and Villages act in clauses 1 and 2 of section 1 of article 5, section 2 of article 7, section 1 of article 8 and section 3 of part 2 of article 12, in violation of the prohibition contained in section 13 of article 4 of the constitution against the amendment of a section of an act without inserting the amended section in full in the new act. If section 17 amends by implication any of the sections or clauses referred to, it is still not subject to the objection made to it. The Municipal Court act was an independent piece of legislation and was complete in itself. It established a court within the city of Chicago and provided for its officers, the manner of their selection, their terms of office and salaries and the manner of their payment. All these things were a part of the single purpose of the act, whose title was, "An act in relation to a municipal court in the city of Chicago." Incidentally, the act may have affected various general laws in relation to the city and its authorities. Such incidental amendment by implication of previously existing law is not a violation of the constitutional provision which requires the section amended to be inserted in the amendatory act. It is only where the law professes to be amendatory, or is amendatory in its nature, that the constitutional provision applies. *People* v. *Wright,* 70 Ill. 388; *Hollingsworth* v. *Chicago and Carterville Coal Co.* 243 id. 98; *People* v. *Crossley,* 261 id. 78.

Section 17 as it is in force in the city of Chicago is the section which was passed by the legislature in 1907 and adopted by the popular vote that year. The subsequent amendments are void. This section provides that the salary of the assistant chief deputy bailiff shall be $2500 per annum and the salary of no other deputy bailiff shall exceed $1500 per annum. The order of the judges is that the salary of the assistant chief deputy bailiff shall be $3000 per annum and the salaries of the other deputy bailiffs shall be amounts

fixed for them severally and varying from $1650 to $2000
per annum.   There is no authority of law for such an order
and the petition did not show any right to a writ of *man-
damus*.   The demurrer should have been sustained instead
of overruled.

The judgment will be reversed.   *Judgment reversed.*

---

(No. 15565.—Judgment affirmed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Er-
ror, *vs.* PRESTON O. CARRICO, Plaintiff in Error.

*Opinion filed December 19, 1923—Rehearing denied Feb. 7, 1924.*

1. CRIMINAL LAW—*a defendant may be tried second time for
manslaughter although indicted for murder caused by abortion.*   A
defendant indicted for murder caused by an abortion may be con-
victed of the lesser offense of manslaughter, and although such
conviction is, in effect, an acquittal of the murder charge so that
he cannot again be tried for murder, it is proper, on allowing a
new trial, to try the defendant again for manslaughter under the
same indictment.

2. SAME—*expert witness may testify that death was caused by
infection from abortion.*   In a prosecution of a defendant for man-
slaughter where death resulted from an abortion, it is proper for
a medical witness who examined the girl before she died to testify
that her death resulted from an infection caused by an abortion.

3. SAME—*a witness in describing a competent fact should use
only such phraseology as is necessary to describe the fact.*   A com-
petent witness, in describing what he finds as a physical fact, as
to which testimony is properly admissible, should use only such
phraseology as is necessary or ordinarily employed for the descrip-
tion of such fact.

4. SAME—*when comment of court as to partisanship of witness
will not reverse.*   A judge should express no opinion concerning
the veracity of a witness, the weight of the evidence or the merits
of the case, but a comment of the court in a trial for manslaughter
in producing an abortion, to the effect that a particular witness
who had testified that the deceased girl had suffered an abortion
was not a partisan in the case, will not necessitate a reversal of
the defendant's conviction where the testimony of the witness does
not connect the defendant with the crime.