(No. 24779.—

THE CITY OF CHICAGO, Appellee, *vs.* THE COUNTY OF COOK,
Appellant.

*Opinion filed December 15, 1938—Rehearing denied Feb. 8, 1939.*

THOMAS J. COURTNEY, State's Attorney, (JACOB SHAMBERG, and WILLIAM H. TUOHY, of counsel,) for appellant.

BARNET HODES, Corporation Counsel, (JOSEPH F. GROSSMAN, ALPHONSE CERZA, and J. HERZL SEGAL, of counsel,) for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

The question involved in this case is the constitutionality of section 57 of "An act in relation to a municipal court in the city of Chicago," as subsequently amended. (Ill. Rev. Stat. 1937, chap. 37, par. 417.) That part of the section challenged provides that the fees of the clerk and the bailiff of the municipal court in certain criminal and *quasi*-criminal cases and proceedings, when not collected from the defendants upon their conviction, or when the defendants are acquitted or discharged, and which remain unpaid at the end of each year, shall be paid out of the county treasury.

The question is presented to this court by an appeal from a judgment of the circuit court of Cook county in the sum of $1,758,005.25 in favor of the city of Chicago against the county of Cook in an action to recover such fees unpaid at the end of each of the years 1932, 1933, 1934 and 1935. The defendant raised the issue by a motion to strike the complaint. A stipulation of facts was entered into in which it was agreed the motion should be considered as a statement of defense in lieu of any answer. Other issues embraced in the motion are not presented to this court. The portion of the stipulation claimed by defendant to be pertinent is that in each of the years mentioned the city made appropriations and levied substantially the amounts thereof for the operation and administration of the municipal court, including salaries and wages of the judges, clerks, deputies and assistants, the bailiff, his depu-

ties and assistants, and expenses and wages of employees for the administration of the offices of the chief justice, clerk and bailiff, respectively, and that the general taxes were extended in each of those years for such levies. This phase of the controversy will be noted later herein. The parties agree that the provisions of sections 32 and 50 of the Fees and Salaries act, relating to the payment from the county treasury of uncollected costs in criminal cases in circuit courts of counties of the first and second class and the criminal court of Cook county, have no application here. The only question submitted to this court concerns the validity of the section in controversy.

By section 34 of article 4 of the constitution, added by amendment in 1904, it is provided that the General Assembly shall have power, subject to the conditions and limitations therein contained to pass any law (local, special or general) providing a scheme or charter of local municipal government for the territory embraced within the limits of the city of Chicago. It further provides that no law based upon the amendment, affecting the municipal government of the city, shall take effect until consented to by a majority of the legal voters of the city voting on the question at an election. In conformity with the provisions of this section the act relating to a municipal court and all subsequent amendments were submitted to referendum.

Defendant attacks the statutory provision in controversy from three angles. The first ground urged relates to an alleged unlawful delegation of power by the legislature. It is claimed the provision does not concern a local corporate purpose, but relates solely to a function exercised by the city in its governmental capacity, as an agency of the State. It is not claimed the law involved concerns the affairs of the county of Cook or that it violates sections 9 and 10 of article 9 of the constitution, which withdraw from the legislature the power directly to impose taxes for purely local, non-governmental purposes. The claim is that

the power to impose upon a municipal corporation a burden for a non-local purpose resides exclusively in the General Assembly, and cannot be delegated. It is argued that the statute did not become a law when passed by the General Assembly and approved by the Governor, but was incomplete as a law, and was but a proposal to be voted upon and accepted or rejected by the electorate; that it became a law only because of its adoption by the voters, and the burden was not imposed upon the county by the General Assembly as only it might do, but by the voters of the city of Chicago, and that therefore the provision is invalid.

Section 1 of article 6 of the constitution provides, "The judicial powers, except as in this article is otherwise provided, shall be vested in one supreme court, circuit courts, * * * and such courts as may be created by law in and for cities and incorporated towns." It is urged that the legislature had the power to create the municipal court, not by virtue of section 34 of article 4, but that the power was derived from section 1 of article 6, with the limitation of section 34 of article 4 as to the mode of the exercise of that power; that section 34 of article 4 was adopted to avoid the requirement of section 29 of article 6 for uniformity in the organization, jurisdiction, powers, proceedings and practice of courts; and that the matter of clerk's and bailiff's fees has no relation to any of those specifications; and, further, that they do not affect the scheme of municipal government, and, therefore, the provision as to them was not properly submitted to a referendum, but was a matter wholly for the determination of the legislature under its exclusive control of governmental powers.

In support of the claim that the legislature may not delegate its legislative power defendant cites *People* v. *Barnett,* 344 Ill. 62. That case dealt with amendments to the Jury Commissioners act, authorizing the selection of women as jurors upon approval of the legislation by referendum. We pointed out that all legislative power, except where with-

held or limited by the constitution, is vested in the General Assembly, and that there is no general constitutional provision for referendum of acts passed by that body. We held the General Assembly could not delegate its power and the law was incomplete and invalid. The statutory requirement for a referendum in that case was not based on any constitutional provision, as distinguished from the constitutional requirement in this case, and the decision that the particular law was invalid is of no assistance in determining the question now before us. Defendant contends that *People* v. *City of Chicago*, 351 Ill. 396, shows that any statute that is non-local cannot be within the requirements of section 34 of article 4 of the constitution. In that case a *mandamus* proceeding was instituted against the city of Chicago and its mayor and aldermen to compel an additional appropriation for the payment of salaries of the city's probation officers appointed by the municipal court under a general statute providing for a system of probation, and the appointment and compensation of probation officers. The city contended the act was for a local corporate purpose and that under sections 9 and 10 of article 9 of the constitution the legislature could not impose the compensation of the probation officers upon the municipality. We held the act was not for a local corporate purpose, but the purpose of the system of probation was State-wide; that the section of the Probation act under consideration had in it elements of public interest and policy relating to the general welfare, and that the provision for minimum compensation of probation officers was not in conflict with the constitutional provisions invoked, and affirmed the judgment of the trial court awarding the writ. Whether the purpose of a statute is local or public has a bearing only upon the question of a violation of sections 9 and 10 of article 9, and has no relation to whether it was properly enacted under section 34 of article 4, which expressly requires a referendum. The statute in controversy in that case was a gen-

eral law without any provision for a referendum. The decision lends no color to defendant's contention.

Under the claim that the legislature derives its power to create municipal courts from section 1 of article 6 of the constitution and not from section 34 of article 4, it is fundamental, and we have repeatedly held as we did in the *Barnett case, supra,* the legislature does not derive its powers from the constitution. Under our system it is vested with all legislative powers not so withheld or limited. The constitution is not a grant of power to the legislature but is a limitation upon its inherent powers, and it may legislate upon any subject not witdrawn from its authority. (*Hunt* v. *Rosenbaum Grain Corp.* 355 Ill. 504.) Section 1 of article 6 does not operate to vest any power in the legislature to create municipal courts. On the contrary, it limits the inherent power of the legislature to the creation of only such courts as are named in that section. It is a limitation upon, and not a grant of, power. Expressions of this court in former cases to the effect that the municipal court was created pursuant to or under the authority granted or vested in the legislature by either section 1 of article 6 or section 34 of article 4 are not to be taken as holding the constitution is a grant of power, but as meaning the court was created under the limitations of those sections of the constitution. With those facts in mind, it is also to be remembered, as contended by defendant, that the enactment of section 34 of article 4 relieved the legislature from the uniformity requirements of section 29 of article 6. (*People* v. *Board of County Comrs.* 355 Ill. 244.) It also relieved the legislature from the prohibition of section 22 of article 4 of the constitution against the passage of local or special laws. (*People* v. *City of Chicago,* 310 Ill. 534.) In particular, it provides that if the legislature shall create municipal courts in the city of Chicago, it may abolish the constitutional offices of justices of the peace, police magistrates and constables in that territory, and in such case the jurisdic-

tion and practice of such municipal courts shall be such as the legislature shall prescribe. These provisions were put into effect and carried out by the Municipal Court act adopted thereafter. The net result of section 34 of article 4 is that, so far as the municipal government of the city of Chicago is concerned, it did away with the limitation as to local or special laws, and that of uniformity, and imposed another, that of a referendum. This left the legislature with all its inherent powers to legislate in respect to the municipal court of that city, subject only to a referendum on matters affecting the municipal government.

The claim that the matter of the fees of the clerk and bailiff have no relation to the organization, jurisdiction, powers, proceedings and practice of the municipal court has no bearing upon the issue. Even though it has no connection with section 29 of article 6, it belongs to the inherent powers of the legislature restored by section 34 of article 4, which removed the prohibition against enacting special or local laws. This leaves for consideration the claim of defendant that the statutory provision in controversy does not affect the municipal government of the city of Chicago. If it does not, the legislature, under its inherent powers, was authorized to enact it without a referendum and such a referendum would be an unauthorized delegation of its powers. On the other hand, if it does affect the municipal government, the constitutional requirement for a referendum operates as a modification of the inherent power of the legislature, and the referendum was proper and the requirement mandatory. This question has been conclusively settled by this court. In *People* v. *City of Chicago, supra,* we said that the object in the adoption of the amendment (sec. 34, art. 4) was to authorize special legislation in relation to a municipal court in Chicago and that acts which are amendatory of it are necessarily special. They relate to a department of the municipal government, and they are based upon the amendment of the constitution, because

without that amendment no special law relating to the municipal court can be passed. Therefore, no amendment to the Municipal Court act can take effect until it shall have been assented to by a majority of the legal voters of the city, voting at a general, municipal or special election. To the same effect is *Ptacek* v. *Coleman,* 364 Ill. 618. In *People* v. *Board of County Comrs. supra,* we said: "The creation of a municipal court is germane to the establishment of local municipal government in that city" [Chicago]. In that case we awarded a writ of *mandamus* compelling the payment of fees of jurors of the municipal court of Chicago under the provisions of section 25, as amended, of the Municipal Court act requiring their payment from the county treasury. While the precise question here was not presented in that case, the subject matter was of public concern, and we upheld the statute notwithstanding it was submitted to a referendum. It is not only admitted but it is urged by defendant that the statute here is of that character. Upon these premises it is manifest that the constitutionality of the statutory provision in controversy is not to be determined by the general constitutional principle which precludes a delegation of legislative power. This is true because section 34 of article 4 modifies that general principle so far as the municipal government of the city of Chicago is concerned. The requirements of that section were observed and the law is not subject to the criticism that it unlawfully delegates legislative power.

By the second ground urged for reversal it is claimed the power to tax is vested exclusively in the legislature; that sections 9 and 10 of article 9 of the constitution concerning taxation for local purposes are the only exceptions to the general rule that the power cannot be delegated; that the power to tax may be delegated only to corporate authorities and not to the voters; and cannot be delegated irrevocably. Whether the contention may be true as applied to the constitution before the amendment by section 34

of article 4, it is unnecessary to consider. The amendment relieved the General Assembly from the prohibitions previously imposed, left the way open for the legislation and imposed the referendum which makes it irrevocable. The contention that section 34 of article 4 does not include the power to tax is answered adversely in *People* v. *Board of County Comrs. supra,* where we upheld the power to impose a burden upon the county for the payment of fees of jurors in the municipal court under section 25 of the same act here in controversy. The provisions of that section are analogous to those of the section questioned here. The fees of the clerk and bailiff are as much a matter of administering a governmental function as are the fees of jurors. They are equally necessary in the administration of justice and in the administration of the municipal government. Thus the constitution itself, as amended, designedly affords an opportunity and means for the very legislation which is claimed to be unconstitutional. The statute is not subject to the defects claimed.

The other contention urged is that the statutory provision challenged, in not limiting the use of the moneys to be collected to the purposes of the municipal court, is, in effect, a provision creating a source of revenue for non-court purposes, and, therefore, concerns a subject not within the scope of the title of the act, in violation of section 13 of article 4 of the constitution. It is argued that in each of the years mentioned the city set up in its budget, as assets available for appropriation, approximately one million dollars per year and did not appropriate against it for needs of the court, but used it each year for other purposes. Defendant claims that section 57 requires the payment of such fees to the city of Chicago, but this is not correct. The requirement is that all moneys collected upon judgments of the municipal court in criminal and *quasi*-criminal cases, shall be paid to the clerk, who at the end of every three months shall pay the city as much thereof as shall consist of costs,

excepting witness fees, and the balance, if any, excepting witness fees, to the officer entitled to receive the same. If the fees in controversy are paid into the general corporate fund of the city, it is not by the requirements of section 57. Whether the city follows the law in appropriating and disbursing funds has no tendency to show the title of the act does not embrace the payment of fees of the clerk and bailiff. In *Galpin* v. *City of Chicago*, 269 Ill. 27, cited by defendant, we held that a provision in section 58 of the Municipal Court act for dividing the proceeds of fines and penalties between the city and the park board was not germane to the title. In that case we said: "Provisions for the support of park systems or for general city purposes' have no relation to the municipal court." That case has no application here. That the provision for fees of the clerk and bailiff is for court purposes and not general corporate purposes is so obvious as to admit of no discussion. It is, therefore, within the scope of the title of the act.

None of defendant's contentions has been established. The judgment of the circuit court is, therefore, affirmed.

*Judgment affirmed.*