(No. 26799.—

WOODMEN OF THE WORLD LIFE INSURANCE SOCIETY *et al.,* Appellees, *vs.* THE COUNTY OF COOK *et al.,* Appellants.

*Opinion filed January 19, 1943.*

THOMAS J. COURTNEY, State's Attorney, (MARSHALL V. KEARNEY, JACOB SHAMBERG, and WILLIAM J. TUOHY, of counsel,) for appellants.

WILLIAM E. MOONEY, for appellee Woodmen of the World Life Insurance Society.

Mr. JUSTICE MURPHY delivered the opinion of the court:

This appeal is prosecuted to reverse an order of the circuit court of Cook county which awarded a writ of *mandamus* against the county of Cook and the members of the Board of Commissioners of said county. The appellees are the Woodmen of the World Life Insurance Society and the Ben Hur Life Association, who are assignees of judgments which the city of Chicago obtained in actions against the county of Cook. The two judgments held by the Woodmen of the World were entered January 12, 1938, and April 24, 1939, respectively. The judgment

held by the Ben Hur Association was entered June 27, 1939. The assignments are all dated May 24, 1940. One of the judgments now held by the Woodmen of the World was affirmed by this court, (*City of Chicago* v. *County of Cook*, 370 Ill. 301,) to which reference is made for the facts as to the nature of the claim. The basis of the two judgments from which no appeal was taken is similar to the one cited.

The main purpose of this suit is to have the court command the county and its commissioners to take certain official action which, if ordered, would provide funds for settling said judgments. It was alleged in appellees' petition that it was the duty of the county, acting through its commissioners, to prepare and pass a budget or appropriation ordinance appropriating such sums as would be deemed essential to defray all necessary expenses of liabilities for the years 1940 and 1941 and that such appropriation should include sufficient funds to pay the judgments but that appellants had failed to perform such duty. This suit was started in October, 1941. After alleging the foregoing facts in reference to the years 1940 and 1941, it was stated that, judged by the cast of the commissioners for the previous years, they would not perform their duty in reference to the appropriation made for the year 1942. The prayer was that appellants be commanded to appropriate in its annual budget for 1942 sufficient amount to pay said judgment, and properly certify the same in the tax levy filed for that year with the county clerk. After appellants' answer was filed setting forth the defense to appellees' claim, the prayer of appellees' petition was amended in the form of an alternative in which it was asked that if the relief in reference to appropriating and levying taxes for the year 1942 was not available, then the appellants be compelled to issue bonds payable in ten equal annual installments and make provision for the levy of an annual tax for the payment of the same.

Appellants' answer admitted the existence of the judgments, the assignments of the same to appellees and that a duty rested upon the county to annually appropriate for its necessary expenses. It was alleged that for the year 1940 they did appropriate and included therein an item of $640,000 for the payment of judgments, $334,333.04 of which was paid on the judgments involved herein. In justification for its failure to appropriate and levy for the payment of the judgments in 1940, it was alleged that the county's maximum tax rate for county purposes for that year was 32 cents on the hundred dollars of valuation of property and that there was no statutory authority by which a separate levy could be made for the judgments. It was stated that such maximum rate was levied for the year and at the end of the fiscal year it was found to have been insufficient to pay the "ordinary running expenses of the county and for the operation of, and payment for, county welfare, hospital, poor farm and institutions of the county" that at the end of the fiscal year there was a deficit of more than $4,000,000, which included the payments made on these judgments. It was further stated that any other plan of appropriation and levy would have required the county to take the funds from its ordinary running expense accounts such as the county welfare, hospital, poor farm and other institutions and apply them to the judgments. Similar allegations were made to cover the year 1941, except that nothing was appropriated or levied in that year for payment of judgments and the further exception that the maximum annual rate was 28 cents on the hundred dollars valuation. For the year 1942, appellants pleaded their diligence in causing a bill to be presented to the legislature for the issuance of bonds to raise funds to pay the said judgments but averred that such bill failed to become a law and that the final condition of the county, including the limitation upon the rate of levy, was not different from the two previous years. Appellees' replies denied appel-

lants' right or authority to place certain appropriations in positions of priority over the claims of said judgments.

The order appealed from directed a writ to issue commanding the county acting through its commissioners to budget and levy in the year 1942 taxes outside the general corporate levy sufficient in amount to produce $313,691.39, such sum being one tenth of the total of said judgments, and that as to the remainder of said judgments it was commanded that the county issue bonds in an amount sufficient to cover the same. The order contained the provision that if the appellees did not elect to accept the bonds in payment of the balance on said judgments that the bonds be sold and the proceeds applied to the judgment.

Appellants appeal directly to this court and, although appellees have not raised a jurisdictional question, appellants have briefed and argued it, contending that the provision of section 75 of the Civil Practice Act (Ill. Rev. Stat. 1941, chap. 110, par. 199,) which provides that "all cases relating to revenue" may be reviewed by this court on direct appeal, authorizes such an appeal in this case.

To determine the jurisdictional question it is necessary to examine the contentions of the parties. Appellants contend, (1) the county has no authority to levy taxes to pay the judgments in excess of the rate fixed for general county purposes and that authority to exceed such rate can only be exercised when authorized by a referendum which has not been held, and (2) that it has no statutory authority to issue bonds as directed, and, being without such power, the order appealed from attempts to coerce the performance of a nonexistent duty.

Appellees contend, (a) that the county has no statutory authority to subordinate the payment of their judgments to the payment of ordinary county obligations; (b) that the authority of the county to appropriate and levy for the payment of judgments such as these is not limited to the statutory rate, but may, in the event of inability to pay,

exceed that rate, keeping, however, within the constitutional limit of 75 cents per hundred dollars valuation, and (c) under the facts shown the county should be required to amortize the judgments under section 34 of the Counties Act (Ill. Rev. Stat. 1941, chap. 34, par. 34,) and issue bonds therefor, assuming such bonds to be within the constitutional limit.

The levying and collection of taxes involves acts of various officials and extends over a period of time. Cases coming to this court on direct appeal have presented questions involving many of the various steps required to be taken in the listing of property, levying and collection of the tax. It is evident that from such a number of cases various jurisdictional questions arise so that no single statement made in one case should be said to cover the facts in every other case. Each case would have to be determined by the facts presented.

Appellants refer to the statement in *Reed* v. *Village of Chatsworth,* 201 Ill. 480, "that the question of revenue can only be at issue when some recognized authority of the State, or some of the municipalities authorized by law to assess or collect taxes, are attempting to proceed under the law and questions arise between them and those of whom the taxes are demanded" and erroneously assume that if an exception to that part of the rule which provides that the questions must arise between the taxing officials and those of whom the taxes are demanded is established, all the facts necessary to sustain jurisdiction by direct appeal are present. The cases do not support that proposition and the ones relied upon by appellants such as *People ex rel. Jones* v. *Webb,* 256 Ill. 364; *People* v. *Holten,* 259 id. 219; *People ex rel. Schreiner* v. *Courtney,* 380 id. 171, are not controlling.

There is one principle common to all the cases and that is that the cases must relate directly to the revenue. It is not sufficient that it affects the revenue, for, as was said

in *Hodge* v. *People,* 96 Ill. 423, "this would embrace every suit in which a county, city, school district, etc., may be a party, since every suit would, in some degree affect the revenue." *People ex rel. Gridley* v. *Hendee,* 199 Ill. 55, was an action in *mandamus* to command the county clerk to provide duplicate assessment books for the township. The furnishing of the books demanded pertained to the matter of extending taxes but it was held that case was not related directly to the revenue. In *Wilson* v. *County of Marion,* 205 Ill. 580, a restraining order was prayed to prevent operation under a contract of employment to search the records of that and adjoining counties to find property that had not been listed for taxation. It is obvious that if successful in the search property might be added which would increase the revenue but such possibility was remote and the case was not related directly to revenue. In *Knight* v. *Partridge Drainage District,* 259 Ill. 63, a writ of *mandamus* was prayed to compel the drainage commissioners to erect certain bridges and as a result there was the fact the bridges must be paid for from taxes, yet the cause was transferred to the Appellate Court. In *People ex rel. DeLeuw & Co.* v. *Village of Midlothian,* 370 Ill. 223, a *mandamus* action in which the petitioner sought a writ of *mandamus* to compel the village to pay or appropriate and levy for the payment of certain judgments, it was held the case was only incidentally or remotely related to the revenue; and in *People ex rel. Moffett* v. *Turnbull,* 256 Ill. 532, on an appeal from a judgment ordering a writ of *mandamus* commanding municipal authorities to levy a tax to maintain a free libary, which also included the validity of a municipal ordinance, it was held no question was at issue that directly involved the revenue. Also see, *City of Chicago* v. *McDonough,* 351 Ill. 200; *People ex rel. Rexses* v. *Cermak,* 317 id. 590.

Even though the case refers to revenue in that the granting of the writ would result in an increase of taxes,

that is not sufficient, for that is only a result incident to the primary purpose of the litigation. As has been stated, the ultimate purpose of the case is to secure funds to pay the judgments but the purpose involved here is limited to a determination of the power and authority the county has to provide for such funds.

For the reasons assigned, this cause is transferred to the Appellate Court for the First District.

*Cause transferred.*