(No. 31638.—

United Biscuit Company of America, Appellant, *vs.* Voss Truck Lines, Inc., Appellee.

*Opinion filed November 27, 1950.*

HIRSCH E. SOBLE, and CARL L. STEINER, both of Chicago, for appellant.

DEMPSEY, MILLS & CASEY, of Chicago, (JOHN W. MILLS, of counsel,) for appellee.

CHARLES LEVITON, of Chicago, *amicus curiae*.

Mr. JUSTICE GUNN delivered the opinion of the court:

In a statement filed in the municipal court of Chicago, United Biscuit Company of America, appellant, claimed that on January 26, 1946, it, by its servant, was operating a truck with due care on route 66, near Braidwood, Will County, and that the Voss Truck Lines, Inc., appellee, by its servant was operating a truck in the opposite direction on the same route, and that the defendant, by its servant, so negligently operated its truck as to collide with plaintiff's truck, damaging it to the extent of $1500. The defendant filed a defense denying it was negligent in the operation of the truck, or that the plaintiff, by its servant, was in the exercise of care in the operation of its truck, and denied that there was any damage. Defendant also filed a counterclaim asking for $600. The case came up for trial before the court without a jury. Upon learning that the cause of action arose in a collision occurring outside of the city of Chicago, the court decided it did not have jurisdiction of the subject matter, and entered a judgment dismissing the case.

At the trial the following stipulation was made: "That the plaintiff is a resident of the City of Chicago, County of Cook and State of Illinois. That the defendant is a foreign corporation engaged in the transportation of freight by motor vehicle and maintains a terminal and dock facilities within the city limits of Chicago. That on January 26, 1946, a collision occurred between a truck belonging to the plaintiff and a truck belonging to the defendant. That this collision occurred on Route 66 near Braidwood, Will County, Illinois. That no question is raised as to the jurisdiction of the Municipal Court of Chicago over the person of the defendant. That the sole question on this appeal is whether the Municipal Court of Chicago had jurisdiction over the subject matter in question."

In an exhaustive opinion the Appellate Court for the First District affirmed the municipal court of Chicago,

holding that the municipal court had no jurisdiction be-
cause the accident out of which the damages were suffered
did not occur in Chicago; that the municipal court derived
its powers from section 1 of article VI of the constitution,
and hence the powers and jurisdiction of the municipal
court should be construed in the same manner as those of
city courts, authorized to be created by said section 1 of
article VI. The case comes to this court upon a certificate
of importance issued by the Appellate Court.

The question presented by this appeal is whether the
municipal court of Chicago has jurisdiction of a civil action
for damages to personal property, which were suffered out-
side of the city, where the plaintiff is a resident of the city,
and the court has jurisdiction of the person of the de-
fendant. The decision of this question will require con-
sidering: (a) which of the two different specified sections
of the constitution govern the creation of an action in the
municipal court of Chicago; and (b) in either case to
what extent, if at all, has such municipal court jurisdic-
tion of causes of action where damages accrue to personal
property caused by events occurring outside of the city of
Chicago.

Section 1 of article VI of the constitution of 1870,
reads: "The judicial powers, except as in this article is
otherwise provided, shall be vested in one supreme court,
circuit courts, county courts, justices of the peace, police
magistrates, and such courts as may be created by law in
and for cities and incorporated towns."

Section 34 of article IV of the constitution of 1870,
adopted some thirty-four years after that constitution was
adopted, authorizing a complete system of local municipal
government for the city of Chicago, contained a provision
with respect to courts to be used in the system, as follows:
"The General Assembly shall have power, subject to the
conditions and limitations hereinafter contained to pass
any law (local, special or general) providing a scheme or

charter of local municipal government * * * for the city of Chicago. * * * and in case the General Assembly shall create municipal courts in the city of Chicago * * * the jurisdiction and practice of said municipal courts shall be such as the General Assembly shall prescribe; and the General Assembly may pass all laws which it may deem requisite to effectually provide a complete system of local municipal government in and for the city of Chicago."

There were two limitations to this general power, one that the general scheme must be consented to by a majority vote of the people of Chicago; and second, that no special or local law especially affecting any *part* of the city of Chicago "shall take effect until consented to by a majority of the local voters of such *part* of" the city of Chicago. In addition to the foregoing, said section 34 of article IV made other provisions which applied only to the system of municipal government in Chicago which, if adopted, permitted the General Assembly to do many things prohibited by the constitution, as adopted in 1870, *viz.*, (a) for said municipal system it could enact any general, special, or local law; (b) it could provide a complete system of local municipal government for Chicago alone; (c) it could provide for consolidation, assumption of debts and debt limitation for the different corporate authorities within the city; (d) could abolish justices of the peace within the city of Chicago and retain them throughout the county outside of Chicago; and other special authorizations and limitations of authority, unnecessary to mention.

Thus, section 34 of article IV abolished in whole or in part certain limitations upon the power of the General Assembly contained in the constitution of 1870, as originally adopted, in so far as they affected the municipal system which might be created in Chicago, and left them in force throughout the balance of the State. An examination of the new amendment discloses it allowed a total or partial disregard in many respects of the prohibition

against passage of local or special laws, as contained in section 22 of article IV of the constitution, and in particular relieved such system of municipal government that might be created in Chicago from the limitations of section 29 of article VI, requiring all laws relating to courts to be general and uniform in operation.

These departures from previous constitutional limitations authorized by the adoption of section 34, which were to apply to the city of Chicago alone, must be considered in determining whether "municipal courts," mentioned therein, that may be created by the General Assembly are permitted as a new and distinct type or kind of court, or whether such court comes within the designation contained in section 1 of article VI, which permitted "such courts as may be created by law in and for incorporated towns," commonly called city courts.

At first glance it would seem that under the constitution of 1870, as originally adopted, it was not possible under article VI, by reason of other constitutional limitations, to abolish justices of the peace in Cook County alone, nor to create courts with jurisdiction and practice, at the will of the General Assembly, nor courts of special type, where one locality alone required only the vote of the locality to put it into existence; or, finally, to create a court that was not general and uniform in its operation.

The only possible way to remove such limitations would be by an amendment of the organic law, *viz.*, the constitution itself. And when we examine the broad power given the General Assembly by section 34 of article IV, with respect to the city of Chicago and its municipal system and the courts as a part thereof, it becomes almost a matter of certainty that the amendment of the constitution by the adoption of section 34 of article IV was designed for such specific purpose, and, of a surety, if article VI be considered the original source of all judicial power, its breadth has been extended by section 34 of article IV to encompass

a new type or species of court, not known or contemplated at the original adoption of the constitution in 1870.

It must be recognized that in some of the cases announced shortly after the adoption and ratification of section 34 of article IV, there appears language in the opinions which would justify a conclusion that the municipal court of Chicago derives its powers entirely from section 1 of article VI of the constitution, and, consequently, its powers and jurisdiction did not exceed those of city courts named therein. These cases must be critically analyzed and studied to see whether that point was actually involved, and whether all implications arising from this comprehensive amendment had been fully considered.

The first case coming before the court, *City of Chicago* v. *Reeves,* 220 Ill. 274, held the amendment was legally adopted and the Municipal Court Act of Chicago valid and constitutional. Then, in *Swigart* v. *City of Chicago, 223* Ill. 371, before the question of the jurisdiction of the court had been considered, we said, with respect to the constitutional amendment: "Since the adoption of this amendment the legislature is not restricted in the passage of local or special laws applicable alone to the city of Chicago in furtherance of the general purposes of the amendment, except such restrictions and conditions as are contained in the amendment itself." Shortly thereafter, in *Miller* v. *People,* 230 Ill. 65, there came before the court a case in which a defendant was indicted and convicted of grand larceny in the municipal court of Chicago. The cause was reversed and the opinion expressed the belief that the municipal courts, in their natural and ordinary meaning, meant the same as city courts authorized by section 1 of article VI. It was not necessary to state this in the opinion as, in the first place, the municipal court had no jurisdiction of felonies under the terms of the Municipal Court Act, (*People ex rel. Melton* v. *Whitman,* 243 Ill. 471,)

and the case could also properly have been disposed of upon the proposition that the grand jurors and jurors selected for the trial of felony cases must come from all over Cook County and not alone from the city of Chicago, which otherwise would deprive the defendant of the right to be tried by a jury from all of the county, as is guaranteed by section 9 of the Bill of Rights. *People ex rel. Smith* v. *Rodenberg,* 254 Ill. 386.

However, later, in the case of *Wilcox* v. *Conklin,* 255 Ill. 604, the *Miller case* was followed, and it was held that the legislature, under the constitutional amendment, could not extend the territorial jurisdiction of the municipal court for the service of original process beyond the corporate limits, and justified this statement by saying that the jurisdiction of the city court, created by authority of section 1 of article VI of the constitution, did not permit it, and that since said article VI was the source of judicial power, municipal courts were governed entirely by it.

Soon after the announcement of these decisions expressions began to appear in the opinions somewhat retreating from this extreme view. In *Hoffman* v. *Paradis,* 259 Ill. 111, it was said that municipal courts, as authorized by section 34, were unique in the court system. And in *Lott* v. *Davis,* 264 Ill. 272, in discussing the Municipal Court Act and the question of jurisdiction and practice, we said: "If the municipal court is considered in its entirety, it is impossible to assign to it a place identical with the grade or class of any other court which now exists or ever has existed." Finally, in *People ex rel. City of Chicago* v. *Board of County Comrs.* 355 Ill. 244, when attention was called to the limitation in section 29 of article VI, regulating uniformity of court action imposed by the original constitution, we said: "The amendment relieved the legislature from the limitations imposed by section 29 of article 6 * * * and authorized the passage of the act by which

the municipal court of Chicago, possessing jurisdiction and exercising powers different from other city courts, was created."

Shortly thereafter, in *People ex rel. Soble* v. *Gill,* 358 Ill. 261, in discussing the Municipal Court Act, we said: "In passing upon the act in question we must bear in mind that section 34 of article 4, being the constitutional amendment of 1904, empowered the legislature to pass laws establishing a local municipal government in and for the city of Chicago, and, with the consent of the voters of the city, to pass any laws it deems requisite, limited only by the restrictions imposed by such amendment." And in the same case we later, in effect, said that the effect of the constitutional amendment was that there was created a new form of legislative procedure for the enactment of statutes, in addition to the method which previously existed. There was the old method which required the observance of the original constitution, and "The other method, being the method added by the amendment to section 34, is the passage of laws for the municipal government of the City of Chicago, by the General Assembly, and the legal voters of the City of Chicago, which laws are generally subject only to such restrictions as are specifically named in such constitutional amendment."

The law announced in these two cases was followed in *Ptacek* v. *Coleman,* 364 Ill. 618. And finally, in *City of Chicago* v. *County of Cook,* 370 Ill. 301, we held that not only were the uniformity requirements of section 22 of article IV of the original constitution abated so far as legislative action was concerned by section 34 of article IV, in creating the municipal court system of the city of Chicago, but also "the net result of section 34 of article 4 is that, in so far as the municipal government of the city of Chicago is concerned, it did away with the limitation as to local or special laws, and that of uniformity, and imposed another, that of a referendum. This left the legislature

with all its inherent powers to legislate in respect to the municipal court of that city, subject only to a referendum on matters affecting the municipal government."

We might add by way of conclusion that the result which has been reached in the recent cases, and in this case, is fully justified from an earlier construction of an amendment of the constitution, when section 31 of article IV, relating to drainage districts, was changed by constitutional amendment, and it was held that the effect of such amendment is the same as a grant of power to the General Assembly, in that it enables the General Assembly to do what, by reason of previous constitutional restrictions, it could not do before, and was but the simple removal of the previous constitutional restrictions, enabling the General Assembly to exercise original powers, which it was, by those restrictions, prohibited from exercising. (*Wilson* v. *Board of Trustees,* 133 Ill. 443; *Wabash Railroad Co.* v. *Coon Run Drainage and Levee Dist,* 194 Ill. 310.) This principle was overlooked at the time the *Miller* and other like cases were announced.

From a consideration of these late cases, and an analysis of the reasons underlying the amendment, and the special limitations removed from the General Assembly by section 34 of article IV of the constitution, it is impossible to hold that the municipal court of Chicago is controlled or governed by the limitations imposed by section 1 of article VI, and we must hold the only limitations upon the power to create municipal courts are those imposed by section 34 of article IV; and, consequently, anything we have said in the past contrary to this holding, either did not pertain to the point in controversy, or was erroneously announced.

In order that there may be no misapprehension in this respect we now say that we no longer adhere to what was said, or might be inferred, with respect to the municipal court of Chicago being created under section 1 of article VI

of the constitution, and disapprove in that respect what we have said in *Miller* v. *People,* 230 Ill. 65; *People ex rel. Sadler* v. *Olson,* 245 Ill. 288; *People* v. *Cosmopolitan Fire Ins. Co.* 246 Ill. 442; *Wilcox* v. *Conklin,* 255 Ill. 604, and *Morton* v. *Pusey,* 237 Ill. 26. On the other hand, we specifically follow and approve those cases in which we have held that the authority for the creation of municipal courts in the city of Chicago was derived from the General Assembly, by eliminating the restriction with respect to its powers over the creation of courts, by the adoption of the amendment of 1904. This particular question has vexed the court for some considerable time, and we are endeavoring to settle, and hope we have settled, it with finality.

Other cases involving jurisdiction of city courts are called to our attention in the briefs, but it is unnecessary to discuss them in view of the fact that they involve a different type of court than municipal courts, and derive their power from a different part of the constitution, as is more specifically set out in the recent case of *Turnbaugh* v. *Dunlop,* 406 Ill. 573.

The second question to be now considered is, holding as we do that the municipal court of Chicago is one brought into being by the removal of previous constitutional restrictions by section 34 of article IV, to what extent has it power and jurisdiction of causes accruing from events occurring outside of the city limits? Section 34 provides "the jurisdiction and practice of said municipal courts shall be such as the General Assembly shall prescribe." The General Assembly has passed a statute known as the Municipal Court Act, (Ill. Rev. Stat. 1949, chap. 37, par. 356 *et seq.*) and this Municipal Court Act has been adopted in the manner prescribed by the constitution. Section 2 of this Municipal Court Act, among other things, provides for actions for damages to personal property in excess of $1000. It makes no provision with respect to the place where the damage may occur, affecting jurisdiction. Sec-

tion 34 also provides for the creation of municipal courts in the city of Chicago, and while the Municipal Court Act refers to municipal courts as being "in and for" the city of Chicago, these words have no special significance, since the word "in" and "in and for" are frequently used interchangeably in the constitution, or as though they meant the same. Thus, we see that circuit courts are "in" the circuit; superior courts are "in and for" Cook County; the county court is "in and for" the county, and the probate court is "in" the county. With respect to county officers, the State's Attorney is elected "in and for" the county; the county superintendent of schools is elected "in" the county, and many other illustrations might be given. We see no special significance in these words.

The cases in which the locality of the productive causes of the actions were so seriously urged and minutely scrutinized were those coming under the original statute creating city courts, which gave jurisdiction of cases "arising in said city." These words are not contained in the Municipal Court Act, and they are no longer in the statute concerning city courts, since the legislature has amended the statute, eliminating the words "arising in said city." (Ill. Rev. Stat. 1949, chap. 37, par. 333.) The former holdings implying that the words "arising in said city" were intended or implied in section 1 of article VI of the constitution, as applied to city courts, are overruled by the recent case of *Turnbaugh* v. *Dunlop*, 406 Ill. 573, and hence the cases containing this phrase have no weight in deciding this particular question.

Jurisdiction is the power to hear and determine cases of a specified class. As applied to jurisdiction over the subject matter, we have said: "As applied to courts, jurisdiction is authority conferred by law to hear and determine controversies concerning certain subjects. Jurisdiction of the subject matter is the power to hear and determine causes of the general class to which the proceedings in

question belong. [Citations.] As applied to a particular controversy, jurisdiction is the power to hear and determine that controversy. [Citation.]" *People ex rel. Dorris* v. *Ford,* 289 Ill. 550; *McFarlin* v. *McFarlin,* 384 Ill. 428.

The municipal court of Chicago is given the power to decide cases of certain classes "in" Chicago. This means that the court cannot function outside of Chicago. The municipal court would have no power of any kind to sit in a case outside the city limits in any part of Cook County, but it does have power to hear cases as long as it holds its court within the city, the place designated by law. The oft-quoted language of *O'Brien* v. *People ex rel. Kellogg Switchboard and Supply Co.* 216 Ill. 354, is appropriate here: "Jurisdiction of the particular matter does not mean simple jurisdiction of the particular case then occupying the attention of the court, but jurisdiction of the class of cases to which the particular case belongs. [Citations.] Whether a complaint does or does not state a cause of action is, so far as concerns the question of jurisdiction, of no importance, for if it states a case belonging to a general class over which the authority of the court extends, then jurisdiction attaches and the court has power to decide, whether the pleading is good or bad. [Citations.] Jurisdiction does not depend upon the rightfulness of the decision. It is not lost because of an erroneous decision, however erroneous that decision may be. [Citations.]" It is elementary that to obtain jurisdiction of the person there must be notice, but there is nothing in the act which makes any specification as to where the event which produces the lawsuit may or must happen that affects jurisdiction of the subject matter. The statute does not require the damage to property occur in the city of Chicago.

Jurisdiction of the person is governed by different principles. Under a former provision of the Municipal Court Act, making it unlawful to sue any defendant out of the county where he resides, except in local actions, we held in

*Iles* v. *Heidenreich*, 271 Ill. 480, that this constituted a privilege which may be waived by appearance, saying: "It has been frequently and uniformly held that the statute confers a privilege upon one who is made defendant in a suit, of which he can avail himself if he chooses, but if he does not plead his privilege in apt time he will be regarded as having waived it and submitted to the jurisdiction of the court. [Citations.]"

The place of occurrence is usually material in acquiring jurisdiction of the person of the defendant. The requirements with respect to the place the defendant may be sued do not go to the question of jurisdiction of the subject matter. The defendant may insist upon the proper venue, or he may waive it. In *Taylor Coal Co.* v. *Industrial Com.* 301 Ill. 381, we said: "The method by which jurisdiction of a particular case within the general class of cases is obtained, and any defects or irregularities in respect thereto, may be waived, and are waived unless seasonable objection is made in accordance with the established practice. [Citations.] Where a court has jurisdiction of the subject matter and may take jurisdiction of a particular case if certain conditions exist, and no objection is raised to the exercise of jurisdiction, as in case of a limitation barring a writ of error, an adequate remedy at law and the like, a party will be deemed to have waived the jurisdictional question. [Citations.] And later, in *Wilson Brothers* v. *Haege,* 347 Ill. 140, we again announced the law as follows: "While a defendant may stand on all his legal rights and require all the forms of law to be pursued before he can be required to answer in a case in which the court has general jurisdiction, he may dispense with the process altogether, waive irregular process and appear in the case. [Citations.]"

At common law, actions were of two kinds, local and transitory. (Chitty, vol. 1, 270; Gould 104; Stephen, 330.) A transitory action, however, has no location. It

can follow the defendant wherever he may be, and if it happened in Indiana, and he was found in the city, its location would be where he was found, or, as is ordinarily said, the test is the location of the object suffering the injury, not the subject causing the injury. (*McLeod* v. *Railway,* 58 Vt. 727, 6 Atl. 648.) The characteristic of a transitory action is that the right of action follows the person of the defendant. (*Brown* v. *Brown,* 155 Tenn. 530, 296 S.W. 356.) Transitory actions, in contemplation of the law, have no locality, and any court in which the defendant is found has jurisdiction. (*Central Power Co.* v. *Railway,* 113 Me. 103, 93 Atl. 41.) At common law, transitory actions could be brought in any county. (54 N.H. 376.) A local action must necessarily be tried where the event occurred, so if it involved real estate, or the partition of land, it was local because the subject of the lawsuit was local, and hence the place of the object of the controversy was very important. On the other hand, transitory actions followed the person of the defendant, who could be sued wherever found.

The present case is a transitory case. It is conceded that there is jurisdiction of the defendant. It makes no difference that the collision occurred on a highway in Will County. The *situs* or *locus* of the cause of action followed the defendant, and when the defendant came into Cook County and was properly brought before the court, the question of where the damage occurred is no longer pertinent, since there is no requirement upon the municipal court of Chicago, in maintaining an action of a transitory character, that the case shall arise in said city, *viz.,* that the event which caused the lawsuit occur in said city.

In the discussion of this question of jurisdiction, prior to the *Turnbaugh case,* this old and well-settled principle of the *situs* of a cause of action has apparently been overlooked, because there is usually statutory provision relating to the venue of cases. Provisions relating to venue have

nothing to do with jurisdiction of the subject matter, unless the location of the event causing the action is made a part of the definition of the class of actions it may entertain. This element is not present here.

In conclusion we hold that in the creation, organization and jurisdiction of the municipal court of Chicago, it acts by virtue of the powers granted to the General Assembly by the adoption of section 34 of article IV of the constitution; and further hold that the action in the present case comes within the class of cases authorized by the Municipal Court Act; that the defendant was found in the city; that the action was transitory, and follows the person of the defendant, and therefore the action was properly brought in the municipal court of Chicago.

The judgments of the Appellate Court for the First District and the municipal court of Chicago are reversed, and the cause remanded to the municipal court of Chicago with directions to proceed in a manner not inconsistent with the views expressed herein.

*Reversed and remanded, with directions.*

Mr. JUSTICE WILSON, dissenting.